[Crim. No. 2504.   Third Dist.   Jan. 20, 1954.]

THE PEOPLE, Respondent, v. ROBERT EUGENE RAVEY, Appellant.

Philip O. Solon for Appellant.

Edmund G. Brown, Attorney General, and Gail Strader, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—An information was filed against appellant charging him with a violation of Vehicle Code, section 502, to wit: operating a motor vehicle while under the influence of intoxicating liquor, and also charging him with three prior convictions under the same section.   Upon being ar-

raigned in the superior court he entered a plea of "Not Guilty" to the offense charged and "Guilty" to the prior convictions. Prior to the commencement of the trial, appellant made a motion to withdraw his original plea and to plead (1) not guilty; (2) former conviction on included offense; and (3) former jeopardy. The court denied said motion and the trial proceeded before a jury which returned a verdict of guilty. The court ordered the matter referred to the probation officer and upon the hearing of his report granted appellant probation for a three-year term on the following conditions: "Serve 90 days in the County Jail; pay a $350.00 fine; when released keep honorably employed; obey all laws; refrain from the use of intoxicating liquor; and report regularly to the Probation Officer."

Appellant has filed a notice of appeal in which he states that he is appealing from the order denying change of plea, order denying determination of double jeopardy and the judgment and sentence made and entered. However, neither in his brief nor oral argument has appellant made any mention of his appeal from orders denying change of plea or determination of double jeopardy, so we may assume that appellant has rightfully concluded that there is no merit in those phases of his appeal and has abandoned them.

Appellant does, however, urge a number of grounds for a reversal of the judgment, and before discussing them we shall summarize briefly the evidence as shown by the record.

About 1:15 p. m. on May 23, 1953, appellant was driving an automobile along a city street in the city of Merced when he was stopped by Officer Shankland, a member of the city police force. The officer testified that appellant had failed to stop at a stop sign at the intersection of 15th and R Streets in that city, but appellant claims that it was another car, similar to his, which the officer saw. In any event, the officer stopped appellant, talked with him, had him get out of his car and walk back to the patrol car, arrested him and then took him to the police station. Shankland said he made the arrest because appellant had the odor of alcohol on his breath and was swaying and unsteady on his feet while walking back to the patrol car.

Appellant was questioned at the police station, and during the interrogation he gave his name and his address and stated that he had been drinking at a bar known as "Lake Yosemite," but had only had two drinks. His speech was jerky, but understandable, and his eyes were bloodshot. While sitting

in a chair at the station, he either fell asleep or passed out and had to be aroused so that the officer could finish the report. He was given another walking test at the station and was unsteady on his feet. He was asked whether he wanted a blood test and when he said that he did he was taken to the general hospital in Merced where a blood sample was taken from his arm. The sample was placed in a small vial which was sealed and, in turn, placed in a cardboard container which was given to Shankland who took it to the police station, addressed it to the Bureau of Criminal Identification and Investigation in Sacramento and mailed it. While being returned to the county jail from the hospital appellant fell asleep or passed out in the car. When he walked from the car to the jail, he was unsteady on his feet. The above recital of facts is based upon Shankland's testimony at the trial.

Appellant's condition was also observed by Officers Grove and Grace and by Captain Buckingham of the city fire department, each of whom saw that appellant was unsteady on his feet. In addition, Grove and Buckingham each detected the odor of alcohol on appellant's breath.

Roger S. Green, a criminologist with the bureau, was qualified as an expert witness. He testified that he received the blood sample and made two separate tests which showed that the alcoholic content of the blood was .29 of 1 per cent by weight. This, he said, is roughly equivalent to the consumption of 12 bottles of beer or 12 one-ounce drinks of whiskey. He also testified, over appellant's objection, that a person having that much alcohol in his blood would necessarily be under the influence of alcohol.

Shankland, Grove and Buckingham each testified that he had observed many persons who were under the influence of intoxicants and each expressed the opinion, based on his observation of appellant, that the latter was under the influence of intoxicating liquor. Grace was not certain whether appellant's condition was due to intoxicants or drugs, but then Grace had not detected the odor of alcohol on appellant's breath. Shankland's opinion was given over appellant's objection. He was the first of the four to testify.

Appellant testified that he worked for the Southern Pacific railroad as a signalman and that he was a disabled war veteran. He stated that he had a knee injury which affected his walking and made him sway; that he suffered from a nervous condition for which he took some pills called V.A. goof balls, prescribed by a doctor of the Veterans Administration. He

testified that he had taken four pills during the hour before 11 a. m. that day; that he had drunk only two bottles of beer and was not intoxicated; that uncertainty in his gait was due to his knee condition. He attributed his falling asleep to the effect of the pills.

Appellant called Dr. Max Brannan as a witness and the doctor testified that a man who had an alcoholic content of .29 in his blood would be drunk to the point that it would be difficult for him to stand or to think clearly. On cross-examination the doctor stated that appellant had been in his office several weeks before and told him he had one knee that had been hurt but that in watching him walk from the office he had not been able to observe any limp.

Appellant's wife testified that appellant suffered from a nervous condition for which he took some pills; that he seemed a little jittery that morning and at her suggestion took four of the pills; that he left the house about 12:15 p. m. and appeared to be driving normally; that he had a definite sway when he walked, more definite sometimes than others.

During its deliberations, the jury returned to the courtroom and the foreman told the judge that they had a problem. When asked what the problem was, the foreman replied: "The question is in taking that blood test, is that the usual procedure that the officer be given the specimen to send out?" The judge advised the jury that there was no evidence as to what the usual procedure was and that he could not tell them.

■ The first claim of error is that the court erred in admitting the testimony of Officer Shankland on the issue of intoxication. The officer had testified that during his four years as a member of the Merced Police Department he had observed many persons under the influence of intoxicating liquor. He was then asked:

"Q. Now, Sergeant, bearing in mind what you observed of Mr. Ravey's conduct on the 23rd day of May, 1953, did you form an opinion as to whether or not he was under the influence of intoxicating liquor?"

Counsel for appellant objected upon the ground that it "is incompetent, irrelevant and immaterial and he is asking the witness to invade the function of the jury." The court overruled the objection and the witness answered: "Yes, sir, he was drunk."

Counsel for appellant then moved to strike out the answer, and in denying the motion the court stated: "Well, now,

wait a minute. The Court recognizes this man as an expert witness and he is the only type of witness who can give his opinion in a matter of this kind. Your objection is overruled." The ruling was correct but in giving his reason for the ruling the court, no doubt inadvertently, misstated the law. What the court undoubtedly meant was that the question of whether a person was intoxicated is not necessarily a matter of expert testimony, as any layman can give his opinion based upon his own observation. However, we do not believe that upon the record here appellant suffered any prejudice by reason of the remark of the court. ■ For it is now well settled that opinion evidence as to intoxication is not limited to expert testimony but is a matter about which any witness may express an opinion. (*People* v. *Clark*, 106 Cal.App.2d 271, 279 [235 P.2d 56]; *People* v. *Hernandez*, 70 Cal.App.2d 190, 192 [160 P.2d 564]; *People* v. *Moore*, 70 Cal.App.2d 158, 164 [160 P.2d 857].)

■ Appellant's next contention is that the court erred in admitting the testimony of witness Green with respect to the degree of intoxication as evidenced by a percentage of alcohol in the blood. At the trial, Roger S. Green testified as a witness for the prosecution that he is a criminologist employed with the State Department of Justice. He has been so employed since 1931, with the exception of three years' service in the armed forces. During this period he has made many tests of blood specimens to determine the alcoholic content of the blood, and has had years of experience and observation in determining such percentage of alcohol in the blood, and observing the degree of intoxication evidenced by various percentages of alcohol. He was then asked: "Mr. Green, could you tell the jury, based upon your studies and tests, what is the percentage of alcohol by weight that would mean that the person's blood that that came from would be under the influence of intoxicating liquor?" Appellant's counsel objected upon the ground that it was incompetent, irrelevant and immaterial, and it was allowing an expert to usurp the function of the jury. The court overruled the objection and the witness replied: "The authorities generally accept .15 of one percent by weight, and over, as representing the point where a person is under the influence of alcohol." He was then asked the further question: "Mr. Green, would you be able to say from your tests whether or not the person from whose blood that was taken, that sample there, was under the influence of intoxicating liquor at the time that

sampling was taken?'' A similar objection was made and overruled and he gave the following answer: ''Yes, they would have necessarily have been under the influence of alcohol.''

Appellant argues that the witness, Green, being only a chemist, was not qualified to give his opinion in answer to the question asked. On page 9 of the opinion in the case of *Lawrence* v. *City of Los Angeles,* 53 Cal.App.2d 6 [127 P.2d 931], there is a chart showing the relation between alcohol in the blood and degree of intoxication. During the cross-examination of Green appellant's counsel examined him at length regarding this chart, displayed the chart to the jury and even offered it in evidence, so it is difficult to understand how appellant could be prejudiced by the answers of Green which were in accordance with the conclusions in the chart.

A large portion of appellant's brief is devoted to a general discussion having no bearing upon the specific issues involved in this appeal. Appellant's counsel refers eloquently to the sacred right of trial by jury, the Magna Carta, the glory of the English law, judicial brain-washing of the jury, and other subjects, but as we read the record they are not involved in this appeal. Likewise, appellant's claim, running all through his brief, that he did not have a fair trial and is the victim of oppression, is not borne out by the record but is contradicted by the comparatively light sentence he received.

We are satisfied from a careful study of the record that the appellant received a fair and impartial trial, that he was vigorously and ably defended, that no prejudicial error was committed, that the evidence as to his guilt was overwhelming, and that the judgment should be and is hereby affirmed.

Peek, J., and Paulsen, J. pro tem.,* concurred.

A petition for a rehearing was denied February 2, 1954, and appellant's petition for a hearing by the Supreme Court was denied February 17, 1954.

---

*Assigned by Chairman of Judicial Council.