Opinion
McCONNELL, J.
Stephen Loomis appeals a judgment of conviction of Vehicle Code section 23152, subdivision (a) after a jury trial and an order of probation.
Loomis was driving his red Ferrari on Highway 101 in San Diego County when he was stopped by Officer Nickelson of the California Highway Patrol (CHP). The officer had observed Loomis make a quick U-turn on the highway and had paced the Ferrari which drove at a speed of 70 miles per hour and straddled the lane lines much of the time. When the officer stopped Loomis, he observed him exiting the vehicle, swaying from side to side. His eyes were red and watery and he had a strong odor of an alcoholic beverage on his breath.
The officer administered a lateral gaze nystagmus test to Loomis and, based on that test, formed an opinion as to the level of blood alcohol in Loomis’ body at the time he was stopped. The court allowed the officer to testify not as an expert but as a lay person basing his opinion on his training, experience, and the number of times he had given the test.
A lateral gaze nystagmus test involves requesting the person at the time of the stop to concentrate on an object (usually a pen) held by the officer *Supp. 4 slightly above the driver’s eye level. The object is held initially directly ahead of the driver’s eyeball which is centered and is looking straightforward in relation to the head. The object is then moved toward the outside of the driver’s field of vision, toward his ear and away from his nose. The officer then observes the onset of an involuntary oscillation of the eyeball, and measures the angle of onset of the oscillation in relation to the center point. The officer then calculates the blood alcohol level based upon the angle of onset of the oscillation.
The officer testified he had been a police officer for five and one-half years and had received 300 to 400 hours of training in the detection of drinking drivers. He had worked for a special CHP-drinking driver detail for almost three years. He had stopped over 2,500 people suspected of driving under the influence and had used the lateral gaze nystagmus test in all of those stops. He had been taught how to administer the test and had attended refresher courses on the subject. He had arrested just under 1,000 people for driving under the influence of alcohol and had compared the results of his field tests against a chemical test in about half the arrests. He stated he was within .02 percent of the chemical test about 96 percent of the time. The officer could not recall the names of any publications he had read or instructors on the subject.
The officer testified to his opinion, based on the above test, that Loomis had a reaction at less than 20° and estimated Loomis’ blood alcohol level between .15 and .16. The officer also testified Loomis admitted having had a few glasses of wine and stated, “I’m drunk, I know it, take me to jail.” Loomis was advised of the requirements of the implied consent law three times, according to the officer, but refused to take a chemical test.
A lab technician from the sheriff’s crime laboratory testified she was aware of the lateral gaze nystagmus test and had administered it approximately five to ten times in the last two to three years. She said she was unable to give a blood alcohol level based on the angle of oscillation but she did not feel it was impossible for one who had administered the test numerous times to do so. The basis for her opinion on this matter was not reflected in the record. In her opinion a person had a blood alcohol level greater than .10 and was under the influence when he showed a reaction at less than 20°.
Prior to trial, the court had ordered the prosecutor to disclose the names and addresses of all persons present at the time of the arrest and subsequent incarceration. During the trial, the officer testified that he had been accompanied by a citizen “ride-along” at the time of Loomis’ arrest. He further testified it was the policy of the CHP to destroy any record of the names of *Supp. 5 ride-alongs to avoid any inconvenience to these citizens and specifically to avoid having them subpoenaed to court or required to testify. The officer stated he had not listed the name of the ride-along in the police report in this case to prevent subpoenas. He testified it was departmental policy to omit the identity of the ride-along from the police report and he could not recall the name at the time of trial. The ride-along had remained next to the police vehicle at the time of the stop and had accompanied the officer and Loomis to the jail.
At trial defense counsel objected to the testimony of the officer on his opinion of Loomis’ blood alcohol level based on the lateral gaze nystagmus test. The objection was overruled. Defense counsel also made a motion to dismiss based on the intentional destruction of evidence potentially favorable to the defendant. The motion was denied. The jury returned a verdict of guilty and defendant was sentenced to five days in custody and ordered to pay $600 as a condition of three years probation.
Loomis contends the trial court erred when it allowed the officer to testify as a lay witness and give his opinion of the blood alcohol level based on the lateral gaze nystagmus test. We agree.
“A lay or nonexpert witness may testify concerning a matter in the form of an opinion only if such opinion (a) is based on his own perception of the facts from which his opinion is drawn; and (b) is helpful to a clear understanding of his testimony. ” (2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) p. 975.)
Evidence Code section 800 provides: “If a witness is not testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is: (a) Rationally based on the perception of the witness; and (b) Helpful to a clear understanding of his testimony. ”
It is fundamental in the law of evidence that a nonexpert witness can only testify to those facts which he perceives with his senses. Lay witnesses have been allowed to give opinions on subjects such as state of intoxication, age, speed or other measurements, and other similar topics.
In the present case the officer testified to the oscillation of the driver’s pupil at a certain angle. That is certainly something he could have perceived. What is not based on his perception, however, is the officer’s opinion that such oscillation at that angle indicates a blood alcohol level of .12 percent. That conclusion could not possibly be based on the officer’s *Supp. 6 own perceptions and could be admitted only if the evidence is admissible as expert testimony.
Accordingly the trial court erred when it ruled the officer was not testifying as an expert but could give an opinion of blood alcohol level based on his training, experience and the number of times he had given the nystagmus test. Even if the officer’s testimony had been offered as an expert opinion, it would have been error to allow it.
In People v. Kelly (1976) 17 Cal.3d 24, 30 [130 Cal.Rptr. 144, 549 P.2d 1240], the Supreme Court stated the law with regard to admissibility of expert testimony:
“ [Admissibility of expert testimony based upon the application of a new scientific technique traditionally involves a two-step process: (1) the reliability of the method must be established, usually by expert testimony, and (2) the witness furnishing such testimony must be properly qualified as an expert to give an opinion on the subject. (Citations omitted.) Additionally, the proponent of the evidence must demonstrate that correct scientific procedures were used in the particular case. (Citations omitted.)
“The test for determining the underlying reliability of a new scientific technique was described in the germinal case of Frye v. United States (D.C. Cir. 1923) 293 F. 1013, 1014, involving the admissibility of polygraph tests: ‘Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.’”
Applying this rule to the present case makes it clear the testimony regarding Loomis’ blood alcohol level based on the lateral gaze nystagmus test was inadmissible.
It is well established in California law that a new form of evidence of a scientific nature will be allowed only when there is a preliminary showing of general acceptance of the new technique in the scientific community. This rule is particularly important in a case such as this, since the evidence of blood alcohol is usually given very great weight by the trier of fact. We have found no authority in California law which discusses the admissibility of testimony as to blood alcohol level based on the test employed here, nor has any other authority been presented from other jurisdictions.
*Supp. 7 There is nothing in the record before us to show the reliability of the nystagmus test has been generally accepted by recognized authorities. The officer did not recall any writings concerning the test, and the evidence technician from the crime laboratory appeared only slightly familiar with the test. Loomis’ counsel has appended to his brief an article on “Alcoholic Gaze Nystagmus”[1] which does not reflect general acceptance of the test in the scientific community.
It is clear the evidence here did not meet the criteria of Kelly, supra, 17 Cal.3d 24, since neither the reliability of the method nor the qualification of the witness as an expert on the subject was established. Since there is no indication of general acceptance in the scientific community of the nystagmus test as an indicator of blood alcohol level, the evidence should have been excluded.
Loomis further contends intentional destruction of evidence deprived him of a fair trial. The evidence in this case showed the policy of the CHP is to destroy any document indicating the name of a citizen who rides along as an observer. The policy also mandates the omission of the name or presence of this person at the scene from the police report. The officer, at trial, had no recall of the name of his ride-along. At trial Loomis moved to dismiss the complaint on the ground the suppression of material evidence deprived him of due process of law. This motion should have been granted.
In People v. Mejia (1976) 57 Cal.App.3d 574 [129 Cal.Rptr. 192], the court upheld dismissal of a felony prosecution where percipient witnesses arrested with defendant were unavailable to testify as they had been released to immigration officials and deported. The court stated, at page 580: “Generally speaking the People may select and choose which witnesses they wish to use to prove their case against a defendant. They are not, however, under principles of basic fairness, privileged to control the proceedings by choosing which material witnesses shall, and which shall not, be available to the accused in presenting his defense.”
The court in Cordova v. Superior Court (1983) 148 Cal.App.3d 177 [195 Cal.Rptr. 758], reaffirmed the rule set forth in Mejia, and quoting other sources stated, at page 181: “. . . ‘If . . . state action has made a material witness unavailable, dismissal is mandated by due process and a defendant’s constitutional right to a fair trial. . . . “The fundamental due process principle ... is that the prosecution may not deprive an accused of the opportunity to present material evidence which might prove his innocence. . . (Citations omitted.)
*Supp. 8 The facts here are even more egregious than in the cases cited. The record shows the police deliberately destroyed evidence of the identity of the percipient witness to avoid subjecting that witness to the inconvenience of having to testify in court. At least in Mejia the names of the witnesses were retained so that a search could at least be attempted. Here the identity of the witness was completely suppressed. We hold that due process requires the retention of the identity of a citizen witness who accompanies an officer on his duties. Retaining this information would not impose a significant burden on law enforcement.
For all the above reasons the judgment of the trial court is reversed and the case is remanded with instructions the complaint be dismissed.
Woodworth, P. J., and Milkes, J., concurred.
A petition for a rehearing was denied April 27, 1984.

 Erwin, Defense of Drunk Driving Cases (3d ed. 1983) page 8-24.