[No. A031382. First Dist., Div. Three. June 23, 1986.]

THRESSA CHATMAN, Plaintiff and Appellant, v.
ALAMEDA COUNTY FLOOD CONTROL AND WATER
CONSERVATION DISTRICT et al., Defendants and Respondents.

COUNSEL

Robert E. Breecker for Plaintiff and Appellant.

Richard L. Reynolds and Bennett, Samuelsen, Reynolds & Allard for Defendants and Respondents.

OPINION

**BARRY-DEAL, J.**—Thressa Chatman, plaintiff below, appeals from a judgment of dismissal after order granting motion for summary judgment in favor of defendants Alameda County Flood Control and Water Conservation District (District) and County of Alameda (County). She argues that triable issues exist as to material facts and that therefore summary judgment was improperly granted. We affirm the judgment.

## I. *Background*

Lion Creek commences in the Oakland Hills, meanders through that city, and empties into San Francisco Bay. Between 1912 and 1916, a private developer covered a portion of the creek bed in the Havenscourt District of Oakland by laying a concrete pipe eight feet in diameter in the creek bed and placing landfill atop the culvert. Appellant's home, located at 2466–64th Avenue, was constructed on top of the fill. Appellant purchased the house in 1965. Lion Creek continued to drain the existing watershed.

The District was created in 1949 (Wat. Code appen., § 55-2), with the purpose of providing "for the control of the flood and storm waters of said district" and protecting "from such flood or storm waters the . . . property in said district . . . ." (Wat. Code appen., § 55-4.)

Following a severe storm in October 1962, the City of Oakland requested the assistance of the District in constructing flood control and storm drainage

facilities. Zone 12, encompassing the Cities of Oakland and Emeryville, was created in 1963 for this purpose.

Prior to zone 12's creation, the City of Oakland surveyed most of Lion Creek. The report noted that the culvert running underneath appellant's property was "clear but the bottom is badly corroded and potholed." The District also conducted its own intensive field investigation of the major streams and tributaries in zone 12 in order to locate problem areas that required improvement. Lion Creek, designated as line J, was included in the 1965 zone 12 channel clearing program.

Several inspections of line J were conducted by the District over the years. A 1972 inspection of line J from Lucille to Bancroft Avenue noted cracking in the roof of the culvert, and "[t]he bottom of this pipe is so badly eroded that in some places holes of 1' exist." In 1976, the District received a complaint of subsidence along line J and inspected the area. In 1977, an engineer involved with the District's construction program suggested that the culvert be repaired. A 1981 inspection of the culvert disclosed cracks in and seepages from the pipe. In 1982, the District conducted inspections of several lines, including line J. The inspection was performed in order to identify problems in the underground system. The inspector's report noted that the concrete pipe was "severely eroded."

In 1982, appellant noticed a crack between the wall and ceiling of her dining room. The crack grew larger, and others appeared. The District inspected the culvert. The inspector concluded, "Settlement may be due to minor failures of culvert or to other causes unknown at this time, but it appears to have some relation to culvert which was constructed in the bed of Lion Creek. . . ." In a letter to appellant, the District stated, "No easement has been granted to the City of Oakland or to the County for the reach of culvert beneath your residence. The District has not acquired any easements for this culvert. Basically, the culvert is privately owned by the property owner and the responsibility for its structural integrity lies with the property owner. This reach of culvert will be bypassed by a larger culvert at a different location which is now being constructed by this District. Only a small flow and/or local drainage will pass through this old culvert system in the future."

In 1983, after filing the requisite claims, appellant filed an action against the City of Oakland, the County, and the District.[1] Appellant's first cause

---

[1]The City of Oakland did not join in the motion for summary judgment and is not a party in this appeal. Appellant has not pursued her appeal as to the County, and we therefore deem abandoned that part of the appeal. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 479, p. 469.)

of action alleged that respondents "owned, constructed, used, maintained, and controlled" the concrete culvert which ran beneath her house. It also alleged that the culvert was in a dangerous condition, that respondents knew of the dangerous condition, and that respondents failed to protect against that dangerous condition. Appellant asserted that as a consequence, water escaped from the culvert, undermining the land upon which her house is built, causing damage to her property. Appellant's second cause of action sought recovery premised upon inverse condemnation. Respondents moved for summary judgment based upon the lack of their ownership of or control over the culvert.

In support of their motion, respondents submitted the declaration of Roger Campbell, maintenance engineer of the District since 1966 and an employee of the District since 1956. Although the District made no showing that Campbell was qualified to testify as an expert witness, his declaration stated that District records demonstrated that the subject culvert was privately planned and built; that the District did not plan, design, create, install, approve, or accept the culvert; that the District owned no easements or rights of way in the culvert; that the District had not maintained, repaired, or reconstructed the culvert; that the District had conducted channel-clearing activities in Lion Creek; that the District undertook no responsibility or liability for the culvert; that in 1983 the District completed a line J bypass pipeline which reduced the storm water flowing in Lion Creek to a trickle; that the District undertakes full maintenance responsibility and liability for parts of the system designed, constructed, or accepted by it.

In opposition to the motion for summary judgment, appellant submitted her own declaration as well as that of her attorney. Attached to the declarations were photographs of the damaged property, photographs of the culvert, and several documents regarding the District inspections of line J and the creation of zone 12. The parties filed supplemental pleadings concerning the motion. The motion was heard and granted, and judgment was entered accordingly.

## II. *Discussion*

Code of Civil Procedure section 437c, subdivision (c), provides that the court shall grant a motion for summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ." "In determining whether the papers show that there is no triable issue as to any material fact, the court shall consider all of the admissible evidence set forth in the papers and all inferences reasonably deducible from such evidence. Sum-

mary judgment shall not be granted based on reasonably deducible inferences if contradicted by other inferences or evidence which raise a triable issue as to a material fact. [Citations.]" (*Brown* v. *City of Fremont* (1977) 75 Cal.App.3d 141, 145 [142 Cal.Rptr. 46].)

"Because summary judgment is a drastic procedure all doubts should be resolved in favor of the party opposing the motion. [Citation.] However, where . . . the facts are not in dispute, summary judgment is properly granted when dispositive issues of law are determined in favor of the moving party. [Citations.]" (*Powell* v. *Standard Brands Paint Co.* (1985) 166 Cal.App.3d 357, 362 [212 Cal.Rptr. 395].)

### A. Admissibility of Campbell's Declaration

■ Appellant objected to Campbell's declaration, alleging it contained legal conclusions and was therefore inadmissible pursuant to Evidence Code section 800. (See *Bowden* v. *Robinson* (1977) 67 Cal.App.3d 705, 720 [136 Cal.Rptr. 871].) "This argument is based on a misconception regarding the proper function of the so-called opinion rule as it affects testimony of nonexperts (Evid. Code, § 800). 'That rule merely requires that witnesses express themselves at the lowest possible level of abstraction. [Citation.] Whenever feasible "concluding" should be left to the [trier of fact]; however, when the details observed, even though recalled, are "too complex or too subtle" for concrete description by the witness, he [or she] may state his [or her] general impression.' [Citation.]" (*Angelus Chevrolet* v. *State of California* (1981) 115 Cal.App.3d 995, 1001 [171 Cal.Rptr. 801], fn. omitted.)

As the District's maintenance engineer for almost 20 years, Campbell was intimately familiar with the District's operations. Tested by the above-cited standard, Campbell's statements regarding the District's approval or acceptance of the culvert, its ownership of rights of way, its assumed responsibilities, and the culvert's status as private property were not inadmissible legal conclusions.

Appellant also objected to many of Campbell's statements as violating the best evidence rule (Evid. Code, § 1500), in that he was interpreting writings already in evidence. Campbell's declaration shows that his statements were not dependent upon the attached documents, but were based upon his personal knowledge of facts gleaned in his capacity as maintenance engineer. (*Angelus Chevrolet* v. *State of California, supra,* 115 Cal.App.3d at p. 1001.) Therefore, Campbell's declaration constituted admissible evidence.

## B. Dangerous Condition of Public Property

Government Code section 835 provides for liability for injury resulting from a dangerous condition of public property. Government Code section 830, subdivision (c), states: "(c) 'Property of a public entity' and 'public property' mean real or personal property owned or controlled by the public entity, but do not include easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity."

Appellant concedes in her brief that no evidence was produced concerning ownership of the culvert. Therefore, appellant's claim alleging liability for the dangerous condition of the culvert may only have merit if the District controlled the culvert.

In *Low* v. *City of Sacramento* (1970) 7 Cal.App.3d 826, 833-834 [87 Cal.Rptr. 173], the court interpreted the phrase, "owned or controlled," concluding, "[w]here the public entity's relationship to the dangerous property is not clear, aid may be sought by inquiring whether the particular defendant had control, in the sense of power to prevent, remedy or guard against the dangerous condition; whether [its] ownership is a naked title or whether it is coupled with control; and whether a private defendant, having a similar relationship to the property, would be responsible for its safe condition."

The District's moving papers for summary judgment show that it did not assume control of the culvert. The zone 12 project, scheduled for completion in 15 years, called for "[i]ncorporation of existing storm drainage facilities wherever feasible."

In a May 1965 letter to the city, the District stated, "There is one other area where some questions have arisen regarding the District's responsibilities and which should be clarified. This question involves the assumption of liability by the District for the major creek channels of Oakland. . . . [T]he District will assume the full responsibility and liability for creek channels once the capital improvement has been completed to the District standards and a right of way has been acquired by the District. Prior to that time the owner of the property through which the creek channel crosses must be responsible for its condition and must bear liability for any damages resulting from the inadequacy or bad condition of the creek." Although the District assumed maintenance responsibility for a portion of Lion Creek, that portion did not include the culvert under appellant's property.

The District included Lion Creek in its 1965 channel clearing program; this, however, is insufficient to show control of the culvert.

Nor are the inspections conducted by the District sufficient to show control of the culvert. The inspections were made either to implement the flood control objectives of the zone 12 project or in response to individual complaints. All of the inspections were necessary to insure effective, continued control of runoff waters. Despite appellant's arguments to the contrary, there was no evidence that the District controlled the culvert.

Appellant argues that another manifestation of control is the District's requirement of preapproving all work done on the culvert. The argument is unpersuasive. A homeowner frequently must obtain a building permit prior to repairing or remodeling his or her house. This does not imply, however, that the regulatory agency "controls" that home.

The issue of whether the District controlled the culvert would generally be decided by the trier of fact. However, "'[A]n issue which is abstractly one of fact may be resolved by summary judgment if the moving party's declarations fully establish the claim or defense and his [or her] opponent's declarations fail to rebut it. [Citation.] To put the matter otherwise, the issue of fact becomes one "of law" and loses its "triable" character if the undisputed facts leave no room for a reasonable difference of opinion.' [Citation.]" (*Angelus Chevrolet v. State of California, supra,* 115 Cal.App.3d at p. 1004.) The court properly granted respondents' motion for summary judgment as to appellant's action for damages caused by a dangerous condition of public property.

## C. Inverse Condemnation

Appellant's second cause of action seeks recovery based on inverse condemnation. "Article I, section 19 (formerly art. I, § 14) of the California Constitution requires that just compensation be paid when private property is taken or damaged for public use. Therefore, a public entity may be liable in an inverse condemnation action for any physical injury to real property proximately caused by a public improvement as deliberately designed and constructed, whether or not that injury was foreseeable, and in the absence of fault by the public entity. [Citations.] [¶] A storm drainage system constructed and maintained by a public entity is such a public improvement. [Citations.] An action in inverse condemnation will lie when damage to private property is proximately caused by use of a storm drainage system for its intended purpose. [Citation.] The fact that a part of the system may have been actually constructed by a private person will not insulate a public

entity from liability, if the system has been accepted or otherwise approved by the public entity. [Citation.]" (*Souza* v. *Silver Development Co.* (1985) 164 Cal.App.3d 165, 170 [210 Cal.Rptr. 146].)

The evidence showed that the District neither approved nor accepted the culvert running beneath appellant's property. The District discharged no water into Lion Creek that would run through the culvert. (Cf. *Souza* v. *Silver Development Co.*, *supra*, 164 Cal.App.3d at p. 170.) In 1983 a conduit was constructed and completed by the District which bypassed Lion Creek, resulting in substantially less storm water flowing underneath appellant's property.

The statute creating the District contained no mandatory direction to build public improvements or repair existing ones. "The district is obliged to do no more than to exercise ordinary care in the erection and maintenance of its structures. It is not an insurer of the safety of persons or against injury to them [citation] or against all possible damages that might be inflicted on private property. [Citations.]" (*Stone* v. *L. A. County Flood Control Dist.* (1947) 81 Cal.App.2d 902, 912 [185 P.2d 396].) Because the District neither built, accepted, approved, nor maintained the culvert, it is not liable.

### III. *Conclusion*

The judgment is affirmed.

White, P. J., and Merrill, J., concurred.