[Nos. A047194, A047912. First Dist., Div. Five. Nov. 19, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
PEDRO CORTEZ OJEDA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

* Pursuant to California Rules of Court, rules 976(b) and 976.1, parts II through IV are not ordered published.

COUNSEL

Leo Paoli, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Christopher W. Grove and Morris Beatus, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LOW, P. J.**—In No. 2746 Pedro Cortez Ojeda was convicted, in a jury trial, of felony driving under the influence of alcohol, and of driving with a blood alcohol level of .10 or higher, with three prior violations within seven years (Veh. Code, § 23152, subds. (a), (b), § 23175). In No. 2743 Ojeda was convicted by a jury of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), and pleaded no contest to sexual battery (Pen. Code, § 243.4, subd. (a)). He contends the trial court erred by allowing the arresting officer to testify as to the results of a horizontal gaze nystagmus test, and by allowing the prosecution to reopen its case on the prior violations after submission to the jury. We affirm.

I

Nystagmus is an involuntary rapid movement of the eyeball, which may be horizontal, vertical, or rotatory. (The Sloane-Dorland Ann. Medical-Legal Dict. (1987) p. 504.) An inability of the eyes to maintain visual fixation as they are turned from side to side (in other words, jerking or bouncing) is known as horizontal gaze nystagmus, or HGN. (*State* v. *Murphy* (Iowa 1990) 451 N.W.2d 154, 156.) Some investigators believe alcohol intoxication increases the frequency and amplitude of HGN and causes HGN to occur at a smaller angle of deviation from the forward direction. (See *State* v. *Bresson* (1990) 51 Ohio St.3d 123 [554 N.E.2d 1330, 1332-1333].)

Sheriff's Deputies Houlihan and Ringen stopped defendant's vehicle at about 12:15 a.m. after they saw him driving erratically. There was a strong smell of alcohol on defendant's breath and his eyes were bloodshot. Deputy Ringen administered five field sobriety tests, four of which defendant failed: counting forward and backward on the fingers of one hand (failed); standing balance on both feet together (passed); heel-to-toe balance (failed); one-legged balance (failed); and "eye-gaze nystagmus" (failed).[1] On the basis of this performance Deputy Ringen concluded defendant was impaired by alcohol intoxication. A sample of defendant's blood taken at 1:30 a.m. contained an alcohol level of .10.

Deputy Ringen testified that he had received approximately 13 hours' training in administration and interpretation of the nystagmus test. He administers it every time he stops a driver or pedestrian he believes may be under the influence of alcohol or drugs, and has found through that experience that the test is an effective method of determining if someone is under

---

[1] Defendant has one artificial leg. Deputy Ringen testified he took that into account by having defendant balance on his good leg.

the influence of alcohol. To administer the test he directs the subject to hold his or her head stationary and to follow a pen with his or her eyes. The deputy then watches to see if the subject's eyes track the pen smoothly or if, on the contrary, they "bounce" as they move from side to side.

Defendant objected to any testimony by Deputy Ringen as to the results of the nystagmus test on the ground that it required scientific expertise which the deputy did not have. The court agreed that Deputy Ringen could not testify to a particular level of blood alcohol on the basis of the nystagmus test, and could not attempt to explain its physiological basis, but ruled he could testify that he observed the phenomenon in defendant and that he has frequently observed the same phenomenon in people known to be under the influence of alcohol.

The deputy then testified to the results of the test: defendant's eye movement as he followed the pen was jerky, and there was further bouncing in the eye at the extremes of movement. From these reactions, and relying on his "training and experience," the deputy formed the opinion that defendant was under the influence of alcohol.

Defendant argues the testimony was improperly admitted because the deputy was a lay witness who may not give an opinion on blood-alcohol level and because the HGN test does not enjoy general acceptance in the scientific community. Implicit in the latter argument is the claim that HGN is a "new scientific technique," which must therefore meet the test of " 'general acceptance in the particular field in which it belongs.' " (*People* v. *Kelly* (1976) 17 Cal.3d 24, 30 [130 Cal.Rptr. 144, 549 P.2d 1240], italics omitted; *Frye* v. *United States* (D.C. Cir. 1923) 293 F. 1013, 1014 [54 App.D.C. 46, 34 A.L.R. 145].) The Attorney General counters that HGN is not a "new scientific technique" and that, if it is, it meets the *Kelly/Frye* "general acceptance" standard.

This case does not present the *Kelly/Frye* problem discussed by the parties. Defendant did not object to the deputy's testimony on grounds that HGN was a novel scientific technique lacking general acceptance. He objected only on the grounds that the deputy was not personally qualified, that is, did not have the medical expertise, to correlate HGN with intoxication. The trial court overruled the objection to the extent that the deputy's opinion was based on his own experience with HGN, and limited the deputy to such testimony. The court did not decide whether testimony based on scientific studies of HGN would meet, or would be required to meet, the *Kelly/Frye* criterion. To the extent the deputy overstepped the line drawn by the court's ruling by testifying to an opinion based on his "training" as well as his own experience, the claim of error was waived by defendant's

failure to object at that time. (Evid. Code, § 353.) The only question presented is the correctness of the court's ruling allowing the deputy to draw an opinion as to defendant's intoxication based upon his own experience with the HGN test.

"A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." (Evid. Code, § 720, subd. (a).) Expertise, in other words, "is relative to the subject," and is not subject to rigid classification according to formal education or certification. (1 Witkin, Cal. Evidence (3d ed. 1986) § 484, p. 454.) Deputy Ringen testified, in effect, as an expert on HGN as an indicator of the influence of alcohol. His testimony met the minimum requirements for expert opinion. He had administered the test to every person he stopped on suspicion of being intoxicated, and had found it was a reliable indicator of alcohol intoxication. His testimony was thus based on his own special experience, and was certainly "sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801, subd. (a).)

The observation of HGN in a person and its interpretation as an effect of alcohol intoxication do not necessarily require expertise in physiology, toxicology, or any other scientific field. The nystagmus effect can be observed without mechanical, electronic or chemical equipment of any kind. At least in the simple form presented in this case, it requires no more medical training than administration of the other field sobriety tests, such as the one-legged balance.

It is hardly surprising that police officers who deal daily with intoxicated persons become expert at recognizing the physical effects of intoxication, and that they learn to perceive effects somewhat more subtle than those apparent to the amateur. This does not make them scientists. A scientific study of HGN would rely on systematic experimentation, and would typically attempt some quantification of the relationship between HGN and blood alcohol. Deputy Ringen drew his generalization from experience, not from experimentation, and did not attempt to quantify the relationship he observed.

We are in accord with those courts of other states which have held that HGN is not inherently more "scientific" than the more familiar field sobriety tests. "[T]he principal obstacle to the admissibility of the horizontal gaze nystagmus test may be its pretentiously scientific name." (*State* v. *Murphy, supra*, 451 N.W.2d at p. 156.) "The gaze nystagmus test, as do the other commonly used field sobriety tests, requires only the personal observation of the officer administering it. It is objective in nature and does not

require expert interpretation." (*State* v. *Nagel* (1986) 30 Ohio App.3d 80 [506 N.E.2d 285, 286]; contra, *State* v. *Reed* (1987) 83 Ore.App. 451 [732 P.2d 66, 68]; *State* v. *Superior Court* (1986) 149 Ariz. 269 [718 P.2d 171, 178, 60 A.L.R.4th 1103].)

Defendant relies solely on *People* v. *Loomis* (1984) 156 Cal.App.3d Supp. 1 [203 Cal.Rptr. 767]. There the officer testified that the defendant had a nystagmus reaction at a deviation from the center point of less than 20 percent, and concluded therefrom that his blood-alcohol level was between .15 and .16. (*Id.*, at p. 4.) The appellate department held the testimony improper in part because "[t]hat conclusion could not possibly be based on the officer's own perceptions . . . ." (*Id.*, at pp. 5-6.)[2] We agree that without a showing of scientific expertise a police officer is not qualified to make a numerical correlation between HGN and blood alcohol level. Deputy Ringen, however, did not state any opinion as to defendant's blood alcohol level, much less purport to know the exact numerical value.

We do not hold that HGN is a reliable indicator of alcohol intoxication, that the HGN test meets *Kelly/Frye* standards, or that nonscientists are qualified to correlate HGN with a particular level of blood alcohol. Nor do we decide the extent of personal experience with a field sobriety test an officer must have in order to use it to form an opinion on intoxication. We hold only that an officer with sufficient experience may testify, based on his or her own experience with the relationship between HGN and alcohol intoxication, to an opinion that a subject was or was not under the influence.

## II-IV*

. . . . . . . . . . . . . . . . . . . .

## V

In No. A047194 the judgment entered September 11, 1989, is affirmed. In No. A047912 the judgment entered November 22, 1989, is modified as follows: defendant is allowed 276 days credit against his term in No. 2746, and that term is deemed served. The judgment of November 22, 1989, is otherwise affirmed.

King, J., concurred.

---

[2] The *Loomis* court also held HGN had not been shown to meet the *Kelly/Frye* criterion of general acceptance in the scientific community. (*Id.*, at pp. 6-7.) As explained above we do not reach that question here.

* See footnote *ante*, page 404.

HANING, J.,—I concur in the result, but disagree with the majority's conclusion that the officer was qualified to testify, in the form of an opinion, about the horizontal gaze nystagmus (HGN) test. "An opinion is an *inference* from facts observed. One of the fundamental theories of the law of evidence, expressed in the *opinion rule*, is that witnesses must *ordinarily* testify to *facts*, leaving inferences or conclusions to the jury or court. [Citations.]" (1 Witkin, Cal. Evidence (3d ed. 1986) § 447.) There are, of course, exceptions, such as those for *expert* witnesses and in those situations when the facts observed by lay witnesses "are too complex or too subtle to enable them accurately to convey them to court or jury in any other manner. [Citations.]" (*Manney* v. *Housing Authority* (1947) 79 Cal.App.2d 453, 459 [180 P.2d 69]; *Chatman* v. *Alameda County Flood Control etc. Dist.* (1986) 183 Cal.App.3d 424, 429 [228 Cal.Rptr. 257]; Evid. Code, § 800.)

Witnesses are qualified to testify as experts only if they have special knowledge, skill, experience, training, or education sufficient to qualify them as an expert on the subject to which their testimony relates. (Evid. Code, § 720, subd. (a).) A lay witness may testify that a person was intoxicated because this is the sort of opinion that is not restricted to experts, but is of sufficient common knowledge that it may be expressed by laypersons. (*People* v. *Ravey* (1954) 122 Cal.App.2d 699, 702-703 [265 P.2d 154]; *People* v. *Garcia* (1972) 27 Cal.App.3d 639, 643, fn. 3 [104 Cal.Rptr. 69]; see also, Evid. Code, § 801, subd. (a).) However, a lay witness may *not* render an opinion that a person was intoxicated if that opinion is based on a scientific test. (1 Witkin, Cal. Evidence, *op. cit. supra*, § 471.)

In this instance the officer testified to his observations of a physiological phenomenon—appellant's eye movement. Those observations are irrelevant in this case unless it is established on the record that they are indicative that the person being examined is under the influence of alcohol. The only evidence in this record that the HGN test is a reliable indicator of being under the influence of alcohol came from the officer himself. I submit that the HGN phenomenon is not sufficiently within common experience that it is readily understood or accepted as an indicator of intoxication. (See, e.g., Evid. Code, § 801.) Consequently, any explanation of the effects of alcohol on eye movement should be given only by an expert.

The officer did not, and could not, testify as to the level of blood alcohol necessary to produce HGN. Is it .10 percent, .08 percent, .008 percent, .001 percent, or some other (lesser or greater) amount? Will *any* amount of alcohol ingested produce HGN? Will any other substance, such as tobacco or caffeine (both of which are commonly used by persons drinking alcoholic beverages) produce HGN? Can it be produced by prescription drugs or

fatigue? Does the HGN test pass *Kelly/Frye*[1] muster; if so, this record does not establish that it does, and the officer is not qualified to establish that fact. In short, there is no evidence in the record to establish that the officer was qualified to render an opinion about the relationship of alcohol ingestion and HGN. Consequently, the admission of that opinion was error.

I am puzzled by the majority's statement that "[w]e do not hold that HGN is a reliable indicator of alcohol intoxication [or] that the HGN test meets *Kelly/Frye* standards . . . ," and yet they conclude that the untrained officer is qualified to render a scientific opinion to the contrary. This analysis simply eludes me. I find the rationale of *People* v. *Loomis* (1984) 156 Cal.App.3d Supp. 1 [203 Cal.Rptr. 767] more persuasive.

In summary, I conclude that the trial court erred in admitting the officer's HGN opinion, but that the error was harmless in light of the blood-alcohol evidence and other evidence of driving under the influence. The HGN opinion was unnecessary to the People's case.

---

[1] *People* v. *Kelly* (1976) 17 Cal.3d 24 [130 Cal.Rptr. 144, 549 P.2d 1240]; *Frye* v. *United States* (D.C. Cir. 1923) 293 F. 1013 [130 Cal.Rptr. 144, 549 P.2d 1240].