[No. 12177-1-III.   Division Three.   January 25, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. RILEY J. CISSNE, *Petitioner.*

*Anthony J. Ditommaso* and *Fuller, Cassel, Beuhler & Hotchkiss, P.S.,* for petitioner.

*Judith L. McCauley, Prosecuting Attorney,* and *Frank W. Jenny, Deputy,* for respondent.

THOMPSON, C.J. — Riley J. Cissne seeks discretionary review of his conviction of driving while intoxicated. He contends the District Court erred in admitting testimony about his horizontal gaze nystagmus test results as well as statements he made to the arresting officer. We reverse and remand.

Mr. Cissne was stopped after a police officer saw him make an improper left turn, weave in and out of his lane of traffic and almost strike a guardrail on six or seven occasions. The officer noticed a strong odor of intoxicants about

Mr. Cissne's person. Six field sobriety tests were administered: the 1-foot balance test, the finger-to-nose test, the alphabet test, the walk-and-turn test, the finger counting test, and the horizontal gaze nystagmus (HGN) test.[1]

Mr. Cissne was unable to perform the 1-foot balance test and, instead of touching his nose with his finger, he touched his forehead with one hand and his lower lip with the other. He had difficulty reciting the alphabet, he failed the walk-and-turn test, was unable to perform the counting test and, based on the officer's testimony at trial, the HGN test results indicated the presence of nystagmus.

Mr. Cissne was placed under arrest and taken to the police station. Throughout the officer's investigation, Mr. Cissne repeatedly threatened to sue him, told him he was making a mistake, and made what the officer interpreted as sexual advances.

Mr. Cissne moved in limine to bar testimony about the HGN test results, his statements about suing the officer, and statements interpreted as sexual advances. He argued that the HGN test was not based on generally accepted scientific principles, was therefore inadmissible under *Frye v. United States*, 293 F. 1013, 34 A.L.R. 145 (D.C. Cir. 1923), and the statements made to the officer were irrelevant and prejudicial. His motion in limine was denied and the case proceeded to trial.

Although the State failed to present any evidence regarding the reliability of HGN testing, the arresting officer was permitted to testify as to Mr. Cissne's HGN test results and to give his opinion regarding them.[2] The arresting officer

---

[1]Nystagmus and nystagmus testing are described in detail herein.

[2]The officer explained nystagmus and HGN testing as follows:
It is a scientific or medical teaching or fact that with the degree of intoxication the eyes are unable to [track] smoothly and/or not even [track] at all. Under extreme intoxication the eye will get to an angle and because of the intoxication the eye is unable to follow and the eye will actually, for lack of better term, go into a spaz effect and the pupil will actually just fluctuate back and forth rapidly from side to side while the eye is trying to focus on the

and dispatch officer testified as to the objected-to statements made by Mr. Cissne after his arrest.

The jury found Mr. Cissne guilty of driving while intoxicated. His conviction was affirmed on appeal by the Superior Court. We accepted review.

## HORIZONTAL GAZE NYSTAGMUS TESTING

1. <u>Contentions</u>. Mr. Cissne contends HGN testing is not based on generally accepted scientific principles and therefore is inadmissible under *Frye*. He cites *People v. Loomis*, 156 Cal. App. 3d Supp. 1, 203 Cal. Rptr. 767 (1984), *People v. Vega*, 145 Ill. App. 3d 996, 496 N.E.2d 501 (1986), and *State v. Barker*, 179 W. Va. 194, 366 S.E.2d 642 (1988).

The State contends HGN testing does not involve scientific principles, is not a novel idea and the *Frye* standard is inapplicable when the test results are not offered to prove a specific blood alcohol level. The State contends that even if *Frye* applies, HGN testing meets that standard. Even though no *Frye* foundation was made in this case, the State suggests we look to the decisions of other jurisdictions which have determined that HGN tests meet the *Frye* standard. *E.g., State v. Superior Court*, 149 Ariz. 269, 718 P.2d 171, 60 A.L.R.4th 1103 (1986); *People v. Buening*, ___ Ill. App. 3d ___, 592 N.E.2d 1222 (1992).

2. <u>Nystagmus</u>. Nystagmus is the "oscillation of the eyeballs, either pendular or jerky". *Stedman's Medical Dictionary* 971 (5th ed. 1982). This involuntary movement results from the body's attempt to maintain orientation and balance. HGN is the inability of the eyes to maintain visual fixation as they turn from side to side or move from center focus to the point of maximum deviation at the side. *State v. Superior Court, supra; State v. Garrett*, 119 Idaho 878, 881,

---

object and just simply watching the movement of the eyes from side to side and you do both their right and left eye.

When asked how persons would respond to an HGN test if they had not consumed alcohol, the officer answered: "They are able to accurately and clearly follow any object from one side to the other as the object is moved."

The officer concluded that, based on the HGN tests, Mr. Cissne "was obviously intoxicated or under the influence of intoxicants".

811 P.2d 488 (1991); Carper & McCamey, *Gaze Nystagmus: Scientific Proof of DUI?*, 77 Ill. B.J. 146 (1988-1989).

The frequency and amplitude of nystagmus is increased and it occurs at a smaller angle of deviation from the forward direction. after consumption of alcohol. The reason is that alcohol is both a depressant and an irritant to nerve endings, including those in the inner ear. Alcohol stimulates the nerves, but at the same time causes them to become more lax and lag behind. As blood alcohol levels increase, gaze nystagmus becomes more noticeable because the distance required to move the eyes to the side in order for the jerking motion to occur lessens. Tenney, *The Horizontal Gaze Nystagmus Test and the Admissibility of Scientific Evidence*, 27 N.H.B.J. 179, 179-81 (1986); Carper & McCamey, 77 Ill. B.J. at 147; *People v. Ojeda*, 225 Cal. App. 3d 404, 406, 275 Cal. Rptr. 472 (1990).

In addition to alcohol consumption, nystagmus can be produced by a variety of pathological, chemical and natural causes. *Buening*, 592 N.E.2d at 1223 (quoting *The Merck Manual of Diagnosis and Therapy* 1980 (14th ed. 1982)). *See also* 2 D. Nichols, *Drinking/Driving Litigation* § 26:01 (Cum. Supp. 1993).

3. Testing Procedures. According to one source, the HGN test was developed for use by law enforcement officers during the 1970's when the federal government began researching ways to assist officers in evaluating drivers suspected of driving while intoxicated (DWI). Carper & McCamey, 77 Ill. B.J. at 147. It was first used in California and, based on our review of reported HGN cases, is now in widespread use, at least for purposes of determining probable cause for a DWI arrest. *See generally* Annot., *Horizontal Gaze Nystagmus Test: Use in Impaired Driving Prosecution*, 60 A.L.R.4th 1129 (1988); Tenney, 27 N.H.B.J. at 180.

In administering the HGN test, the driver is instructed to cover one eye and focus the other on an object such as a pen, pencil or finger which is held at the driver's eye level. As the object is gradually moved out of the driver's field of vision and toward his or her ear, the officer watches the eyeball to

detect involuntary jerking and estimate the angle of gaze nystagmus. The procedure is repeated for the other eye. The nearer to the subject's nose that gaze nystagmus begins, the higher the blood alcohol content.[3] Tenney, 27 N.H.B.J. at 179-80; Carper & McCamey, 77 Ill. B.J. at 147. *See also Annot., supra,* 60 A.L.R.4th 1129.

The National Highway Traffic Safety Administration claims the HGN test is an accurate and effective way to determine whether a driver's blood alcohol concentration exceeds .10. National Hwy. Traffic Safety Admin., DOT HS 806 512, *Improved Sobriety Testing* (Jan. 1984), *reprinted in* 2 D. Nichols ch. 26 app. A (1984).

4. Varying Judicial Interpretations. The admissibility of HGN evidence has been challenged in numerous jurisdictions. As summarized below, judicial responses have varied.

a. *Not a Scientific Test.* Some jurisdictions view the HGN test as no more scientific than other field sobriety tests. For example, *State v. Nagel,* 30 Ohio App. 3d 80, 80, 506 N.E.2d 285, 286 (1986) concluded:

> The gaze nystagmus test, as do the other commonly used field sobriety tests, requires only the personal observation of the officer administering it. It is objective in nature and does not require expert interpretation.

*Nagel* held an officer's testimony as to the results of HGN testing is admissible as lay opinion evidence.

---

[3]There are three possible signs of intoxication for each eye:

Angle of Onset — the more intoxicated a person becomes, the sooner the jerking will occur as the eyes move to the side.

Maximum Deviation — the greater the alcohol impairment the more distinct the nystagmus is when the eyes are as far to the side as possible.

Smooth Pursuit — an intoxicated person often cannot follow a slowly moving object smoothly with his eyes.

2 D. Nichols § 26:01, at 109 (Cum. Supp. 1993).

A score of six points is possible, three for each eye. According to the National Highway Traffic Safety Administration, if a driver scores four or more points, the driver's blood alcohol concentration is above .10. National Hwy. Traffic Safety Admin., DOT HS 806 512, *Improved Sobriety Testing* 4 (Jan. 1984), *reprinted in* 2 D. Nichols ch. 26 app. A (1984). According to one source, however, there is no agreement in the scientific community about the correlation between the degree of onset of alcohol gaze nystagmus and blood alcohol concentration. 2 D. Nichols § 26:01, at 3-4 (1993).

*State v. Bresson*, 51 Ohio St. 3d 123, 554 N.E.2d 1330 (1990) reaffirmed *Nagel*'s determination that HGN tests are not scientific tests. *Bresson* held the only requirement prior to admission of HGN test results is the officer's knowledge of the test, his training, and ability to interpret his observations. Citing *Nagel, State v. Sullivan*, ___ S.C. ___, 426 S.E.2d 766, 769 (1993) held evidence resulting from HGN tests, as from other field sobriety tests, is admissible when the test is used "to elicit objective manifestations of soberness or insobriety".

In *State v. Murphy*, 451 N.W.2d 154 (Iowa 1990), the appellant argued that HGN evidence should not have been admitted because the officer was not qualified as an expert and there was no proven scientific basis for the test. *Murphy*, at 156, noted "the principal obstacle to the admissibility of the horizontal gaze nystagmus test may be its pretentiously scientific name". Viewing the HGN test as primarily technical information and applying Iowa Rule of Evidence 702,[4] *Murphy* concluded that testimony by a police officer trained and experienced in administering HGN tests was admissible without the need for further scientific evidence.

*Finley v. State*, 809 S.W.2d 909, 914 (Tex. Ct. App. 1991) held HGN evidence admissible to prove intoxication and opinion testimony about the HGN test by officers admissible without their being qualified as experts. *Accord State v. Edman*, 452 N.W.2d 169 (Iowa 1990) (scientific testimony not required because the HGN test is easily administered and its results may be objectively recorded by a properly trained officer).

In the above cited cases, HGN evidence was admitted as evidence of intoxication, but not as evidence of a specific degree of blood alcohol content.

■■ b. *A Scientific Test.* Many jurisdictions, perhaps a majority, have concluded that HGN testing is based on scientific principles and the *Frye* standard *or* other standard for

---

[4]*Murphy* determined that because the Iowa Law Enforcement Academy and the United States Department of Transportation viewed the HGN test as a reliable indicator, it was reliable for purposes of rule 702.

determining scientific reliability must be met if test results are to be introduced as evidence of intoxication. For example, *State v. Superior Court*, 149 Ariz. at 276, concluded:

> The HGN test is a different type of test from balancing on one leg or walking a straight line because it rests almost entirely upon an assertion of scientific legitimacy rather than a basis of common knowledge.

A similar conclusion was reached in *State ex rel. Hamilton v. City Court*, 165 Ariz. 514, 799 P.2d 855 (1990); *State v. Garrett*, 119 Idaho 878, 881, 811 P.2d 488 (1991); *State v. Witte*, 251 Kan. 313, 322, 836 P.2d 1110, 1116 (1992); *State v. Armstrong*, 561 So. 2d 883 (La. Ct. App.), *writ denied*, 568 So. 2d 1077 (La. 1990); *State v. Clark*, 234 Mont. 222, 762 P.2d 853 (1988); *Commonwealth v. Apollo*, 412 Pa. Super. 453, 603 A.2d 1023 (1992). *Cf. State v. Borchardt*, 224 Neb. 47, 395 N.W.2d 551 (1986) (test results cannot be characterized as "scientific" or "technical evidence" and admissible until it is established that these results demonstrate what they are supposed to demonstrate). We join those jurisdictions that recognize that HGN testing rests on an assertion of scientific legitimacy.

Some jurisdictions requiring adherence to the *Frye* standard have found the HGN test meets that standard. Others have yet to make that determination. *Compare State v. Superior Court, supra, Armstrong and Garrett with Witte, Buening, and Apollo. Witte*, the most skeptical of the acceptance of HGN testing in the scientific community, refused to determine whether HGN evidence met the *Frye* standard because, as in this case, the trial court lacked an opportunity to examine, weigh and decide the disputed facts to determine whether the test was sufficiently reliable.[5] As *Witte* noted, research and articles critical of HGN testing appeared after some jurisdictions concluded that HGN testing satisfied the

---

[5]The disputed facts in *Witte* were contained in books and journals, many of them critical of HGN testing. *E.g.*, Rouleau, *Unreliability of the Horizontal Gaze Nystagmus Test*, 4 Am. Jur. Proof of Facts 3d 439 (1989); Pangman, *Horizontal Gaze Nystagmus: Voodoo Science*, 2 DWI Journal 1 (1987); 2 D. Nichols § 26:01 (Supps. 1991 & 1992).

*Frye* standard. Other jurisdictions have refused to apply the *Frye* standard to determine the admissibility of HGN evidence, even though they have determined it is based on scientific principles. For example, Montana has concluded its liberal evidentiary rules have eroded the "general acceptance" standard of *Frye*.

> Unless an exaggerated popular opinion of the accuracy of the particular technique makes its use prejudicial or likely to mislead the jury, the better approach is to admit all relevant scientific evidence in the same manner as other expert testimony and allow its weight to be attacked by cross examination or refutation.

*Clark*, at 227. The evidentiary rule relied on in *Clark*, Montana Rule of Evidence 702, is identical to Fed. R. Evid. 702 and Washington's ER 702. All three state:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

A conclusion similar to *Clark* was reached in *State v. Gleason*, 123 Idaho 62, 65, 844 P.2d 691, 694 (1992), wherein the court reaffirmed the plurality opinion in *Garrett*. *Gleason* held the appropriate test for measuring the scientific reliability of evidence, including HGN evidence, is Idaho Rule of Evidence 702, not *Frye*. A similar result has been reached in Oregon under Oregon evidentiary rules. *See State v. Brown*, 297 Or. 404, 687 P.2d 751 (1984); *State v. O'Key*, 123 Or. App. 54, 858 P.2d 904 (1993); *State v. Reed*, 83 Or. App. 451, 732 P.2d 66 (1987).

Although Washington recognizes that other jurisdictions have rejected *Frye* in favor of a more liberal test of admissibility based on the relevance standard of the Federal Rules of Evidence, it nevertheless has continued to employ *Frye* when determining the admissibility of evidence based on novel scientific procedures. *State v. Cauthron*, 120 Wn.2d 879, 886, 846 P.2d 502 (1993). *Cauthron* was decided prior to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, ___ U.S. ___, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993). *Daubert* held the

"general acceptance" standard of *Frye* does not govern trials conducted under the Federal Rules of Evidence. Under Fed. R. Evid. 702, if a witness qualifies as an expert, the merits and demerits of a particular scientific test, approach or procedure are simply matters for the jury to sort out. However, until such time as our Supreme Court abandons *Frye* and interprets ER 702 in the same manner as *Daubert* interpreted Fed. R. Evid. 702, we are bound by *Cauthron* and previous decisions.

We hold the *Frye* standard applies to the admission of evidence based on HGN testing, unless, on remand, the State is able to prove that it rests on scientific principles and uses techniques which are not "novel" and are readily understandable by ordinary persons.[6] We decline the State's invitation to follow those few jurisdictions that have concluded that HGN testing meets the *Frye* standard. The trial court must evaluate, weigh and consider the conflicting evidence before determining whether the test is novel, and, if it is novel, whether it is reliable as an indicator of the probability of impairment or of a specific blood alcohol level. The parties have not brought any of this evidence to the attention of this court or the trial court.

## ADMISSION OF STATEMENTS

Mr. Cissne contends the trial court also erred in admitting testimony regarding Mr. Cissne's statements about suing the officer and those interpreted by the officer to be sexual advances. He contends the statements were irrelevant because they had nothing to do with any elements of the crime

---

[6]An expert opinion based on practical experience and acquired knowledge and not involving a new method of proof or novel scientific principle does not have to meet the *Frye* standard when such opinion is readily understandable by ordinary persons. *State v. Ortiz*, 119 Wn.2d 294, 311, 831 P.2d 1060 (1992). *See also State v. Noltie*, 57 Wn. App. 21, 786 P.2d 332 (1990) (*Frye* standard does not apply to colposcopic evidence because colposcopy did not constitute a novel field or scientific technique even though its use in child abuse cases was relatively recent), *aff'd*, 116 Wn.2d 831, 809 P.2d 190 (1991). We doubt that the State will be able to show that HGN testing falls within the exceptions recognized in *Ortiz* and *Noltie*.

and, even if relevant, they were inadmissible because they were prejudicial. ER 403.

■ Evidence is relevant if it tends to make any fact of consequence more or less probable. ER 401. As stated in *Nagel*, at 80: "Objective manifestations of insobriety, personally observed by the officer, are always relevant where . . . the defendant's physical condition is in issue."

■ Since the issue was Mr. Cissne's intoxication, the statements at issue were relevant. The trial court balanced their probative value with their prejudicial effect. We cannot say the court abused its discretion in admitting the statements.

### PREJUDICIAL ERROR

■ Mr. Cissne contends the improper admission of the HGN tests is sufficient to require a new trial. *Barker*. We agree. Although the trial court's error was not of constitutional magnitude, a new trial is required because it is impossible to determine whether the jury's verdict was affected by the error. *State v. Zwicker*, 105 Wn.2d 228, 243, 713 P.2d 1101 (1986).

We reverse and remand for a new trial.

MUNSON and SWEENEY, JJ., concur.

Review denied at 124 Wn.2d 1006 (1994).