Argued and submitted July 15, 1986, affirmed January 28, 1987

STATE OF OREGON,
*Respondent,*

*v.*

DORINA LOUISE REED,
*Appellant.*

(K76901; CA A39029)

732 P2d 66

Jenny M. Cooke, Portland, argued the cause and filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Defendant appeals her conviction for driving under the influence of intoxicants (DUII). *Former* ORS 487.540 (*now* ORS 813.010). She argues that it was error to admit evidence of the horizontal gaze nystagmus (HGN) test and to refuse to give certain jury instructions. We affirm.

In April, 1985, Trooper Roberts stopped defendant, who was speeding and driving erratically. She smelled an odor of alcohol and asked defendant if she had been drinking. She said that she had. After reading her the *Miranda* rights, Roberts conducted several field sobriety tests, including the HGN test. Based on the results of those tests, defendant's driving performance and her admission that she had had 40 ounces of beer and one vodka and lemonade, Roberts arrested defendant for DUII. A breath test indicated a blood-alcohol level of .12 percent.

At trial, Roberts described the HGN test:

"What it requires me to do is to hold a solid object such as a pen or a penlight about twelve inches in front of a person's face. I ask them to hold their head still and I move the object back and forth in front of their face. What I ask them to do is to follow that object with their eyes [while] holding their head still.

"* * * * *

"Q: In your experience, what have you noticed about people's eyes who are affected by alcohol?

"A: They have a jerking movement in their eyes.

"Q: Could you describe that a little more?

"A: * * * A person who has not consumed any alcoholic beverage, their eyes will move smoothly as they move back and forth. A person who has consumed an alcoholic beverage may have a jerking movement of their eye, meaning that the tracking, when they attempt to track the object that I move back and forth across—in front of their face, their eyes will jerk. This isn't always the case, however, so there's another test that I attempt to check them further with. And what I have them do is bring the colored portion of the eye out as far as it will go in the corner and then I have them bring it back and if there's a jerking movement of the eye that will tell me that most likely that person is under the influence of intoxicants."

Roberts testified that she had received in-service training in the use of the HGN test, that she had administered the test in the field over 100 times in the past two years, that defendant had failed the first part of the test and that she had used the test as a factor in determining that defendant was under the influence of intoxicants.

■      Defendant objected to that testimony on the ground that Roberts was not qualified as an expert to testify to scientific evidence.[1] Roberts admitted that she knew nothing about the bio-psychological basis of the test, that she did not know whether alchohol is the only cause of the jerking of the eyeball and that she did not rely on any established authorities on vision or the central nervous system. The trial court overruled the objection:

> "I'm going to rule in this case that it is not a scientific test as it's to be applied in this particular circumstance. I will assume that the state and the witness will refrain from referring to any relationship between the observed symptoms and alleged blood alcohol. But the officer, if it is her opinion, based upon her experience that she's had * * * performing this roadside test on people, that people * * * who are under the influence or who have alcohol in their system display this bouncing with the eyes, she'll be allowed to testify to that fact. I see no significant difference between this and an officer who testifies, as they commonly do, that someone had a poor reaction to light. When asked on occasion what that means, they will explain simply that it's their experience that people who are * * * under the influence of intoxicants demonstrate commonly a poor reaction to light during a roadside test. It is perhaps not something that's universally known to all of us that there's a fluttering or bouncing of the eye at a certain angle when someone has been using alcohol, but it's also not commonly understood to everybody that pupil dilation reaction rates also relate to that as well. I think the key here is whether the observation that's made by the officer is reasonably attuned to her experience in this field and that her conclusion is relevant to the issue before us * * *."

We disagree with the trial court's conclusion that the HGN test was not "scientific evidence." Scientific evidence is

---

[1] Defendant also objected to the testimony on the ground that the state had failed to comply with the discovery statutes. Defendant does not renew that objection on appeal.

"evidence that draws its convincing force from some principle of science, mathematics and the like." *State v. Brown,* 297 Or 404, 407, 687 P2d 751 (1984). Nystagmus is the "[r]hythmical oscillation of the eyeballs, either horizontal, rotary or vertical." *Stedman's Medical Dictionary* 1104 (2nd ed 1966). As described by Roberts, the HGN test draws its convincing force from a scientific principle that consumption of alcohol causes nystagmus. The difference between the HGN test and other, more common, field sobriety tests is that certain reactions to alcohol are so common that we take judicial notice of them.[2]

■  Because the HGN test is scientific evidence based on a novel scientific principle, we must determine whether it "is probative under OEC 401 and the relevancy and prejudice analysis implicated in OEC 702's helpfulness standard * * *." *State v. Brown, supra,* 297 Or at 417. *Brown* instructs us to consider several factors in determining whether an HGN test

---

[2] In *State v. Clark,* 286 Or 33, 593 P2d 123 (1979), the court stated:

"This court can properly take judicial notice of the fact that observable symptoms or 'signs' of alcohol intoxication include the following:

"(1)   Odor of the breath

"(2)   Flushed appearance

"(3)   Lack of muscular coordination

"(4)   Speech difficulties

"(5)   Disorderly or unusual conduct

"(6)   Mental disturbances

"(7)   *Visual disorders*

"(8)   Sleepiness

"(9)   Muscular tremors

"(10)  Dizziness

"(11)  Nausea

"In our opinion, there is a sufficient 'foundation,' as a matter of either common knowledge or of scientific and medical knowledge, to make 'revelant' testimony of the absence of such observable symptoms as circumstantial evidence not only upon the question whether the driver of a motor vehicle is 'under the influence of intoxicating liquor' * * *, but also upon the question whether * * * a 'chemical analysis' of the breath of a driver * * * was an accurate 'chemical analysis,' without requiring the defendant to 'lay a foundation' by expert testimony, as required by the Court of Appeals." 286 Or at 39. (Emphasis supplied; footnote omitted.)

Given that the HGN test is a recent innovation, the court could not have intended to include nystagmus within the meaning of "visual disorders."

result is admissible.[3] The problem in the present case is that the proponent of the evidence, the state, failed to develop a record for us to make a determination of any of those factors. Although Roberts may be qualified as an expert in *giving* the test, she was not qualified as an expert on the reliability of the relationship, if any, between alcohol consumption and nystagmus. Without at least some expert evidence in the record on that critical point, we decline to "take judicial notice of many legislative facts to decide whether the proffered evidence should be admitted [in criminal trials]." *State v. Brown, supra,* 297 Or at 420 n 7. It was error to admit results of the HGN test.[4]

■ However, the error is not reversible error, given the record in this case. The Intoxilyzer results indicated that defendant had a blood alcohol content of .12 percent. Roberts and a bystander testified that defendant was speeding and driving erratically. Roberts testified that there was a heavy odor of alcohol on defendant's breath, that she failed field sobriety tests other than the HGN test and that she admitted to consuming 40 ounces of beer and a drink. Trooper Hastings testified that defendant did not perform well on two field sobriety tests and that he also smelled alcohol on her breath. Given the overwhelming evidence of guilt, and the fact that Roberts' testimony on the HGN test was very limited, we conclude with reasonable certainty that a different verdict would not have resulted in the absence of the error. *See State v. Wood,* 34 Or App 569, 574, 579 P2d 294, *rev den* 284 Or 80a (1978).

---

[3] The factors we are to consider include: (1) the technique's general acceptance in the field; (2) the expert's qualifications and stature; (3) the use which has been made of the technique; (4) the potential rate of error; (5) the existence of specialized literature; (6) the novelty of the invention; (7) the extent to which the technique relies on the subjective interpretation of the expert, (8) the existence and maintenance of standards governing its use; (9) presence of safeguards and the characteristics of the technique; (10) analogy to other scientific techniques whose results are admissible; (11) the nature and breadth of the inference adduced; (12) the clarity and simplicity with which the technique can be described and its results explained; (13) the extent to which the basic data are verifiable by the court and the jury; (14) the availability of other experts to test and evaluate the technique; (15) the probative significance of the evidence in the circumstances of the case; and (16) the care with which the technique was employed in the case. *See State v. Brown, supra,* 297 Or at 417 and n 5.

[4] In *State v. Chiodo,* 80 Or App 453, 722 P2d 58, *rev den* 302 Or 461 (1986), defendant raised, by pretrial motion to exclude evidence, the admissibility of the HGN test. We decided only that the officer could testify that he gave the test. We did not decide whether the results of the test were admissible.

■ Defendant also argues that the trial court erred in refusing to instruct the jury (1) that certification of the Intoxilyzer machine is merely evidence that the machine could lawfully be used to perform breath tests and is not evidence that the test in this case was properly performed or that it was accurate and (2) that evidence of a permit for chemical analysis of a person's breath is admissible to demonstrate that the person was lawfully authorized to perform the Intoxilyzer test but is not evidence that the test is accurate or that it was properly performed. The trial court did not abuse its discretion in refusing to give those instructions, because a different instruction adequately covered the same subject. *See State v. Shaw,* 68 Or App 693, 696-97, 684 P2d 7 (1984).[5]

Affirmed.

---

[5] The trial court instructed the jury:

"You may consider evidence of the presence or absence of observable symptoms of intoxication in determining the accuracy of the Intoxilyzer. It is up to you to determine what weight you will give to the Intoxilyzer. You are not required to accept such evidence, even though it may be uncontradicted. You should give the Intoxilyzer such weight as you feel is appropriate in reaching your verdict."