Argued and submitted July 24, 1991, reversed and remanded March 25, 1992

STATE OF OREGON,
*Appellant,*

*v.*

FERNANDO QUINONES ACOSTA,
*Respondent.*

(90-341-C)

STATE OF OREGON,
*Appellant,*

*v.*

FERNANDO QUINONES ACOSTA,
*Respondent.*

(90-1487-C)

STATE OF OREGON,
*Appellant,*

*v.*

EVERETT DUNCAN,
*Respondent.*

(90-1115-C)

STATE OF OREGON,
*Appellant,*

*v.*

DAVID TUCKER,
*Respondent.*

(90-1462-C; CA A66035)

827 P2d 1368

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Mary M. Reese, Deputy Public Defender, Salem, argued the cause for respondents. With her on the brief was Sally L. Avera, Public Defender, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Deits, Judge.

DEITS, J.

## DEITS, J.

Defendants in these consolidated cases were charged with driving under the influence of intoxicants. ORS 813.010. The trial court suppressed the results of the breath test taken by each of the defendants on the ground that the Oregon State Police (OSP) had not complied with its own administrative rule governing the testing of the accuracy of the Intoxilyzer machines used to determine blood alcohol content.[1] The state assigns error to the trial court's granting of the motions to suppress. We reverse and remand.

ORS 813.010(1)(a) provides that a person commits the offense of driving under the influence of intoxicants if the person drives with a blood alcohol content of 0.08 percent as shown by chemical analysis of the breath or blood. ORS 813.160 requires that OSP establish methods for chemical analysis of a person's breath. It is further required to

> "[t]est and certify the accuracy of equipment to be used by police officers for chemical analyses of a person's breath before regular use of such equipment and periodically thereafter at intervals of not more than 90 days. Tests and certification required by this subparagraph shall be conducted by trained technicians." ORS 813.160(1)(b)(C).

Pursuant to ORS 813.160(1), OSP adopted rules for the testing and certification of breath testing equipment. OAR 257-30-035 establishes the required range of accuracy for the equipment. It provides that a trained technician of the Oregon State Police Crime Detection Laboratory

> "shall certify the accuracy of the instrument if the accuracy test performance is *within a range of 0.01 high to 0.02 low* from the expected value of a reference sample provided by the Laboratory." (Emphasis supplied.)

Defendants' breaths were tested by the use of Intoxilyzer Model 4011A. To test an Intoxilyzer for accuracy, a technician uses a known standard solution (called the equilibrator solution) at a given temperature. At the end of the test, the Intoxilyzer prints out the reading for the known solution and the technician compares it to the "expected" reading for the same solution, which is provided on a chart. If the reading

---

[1] The parties agreed that the trial court could decide the consolidated cases based on their written stipulation of facts and on the record made in an earlier case.

for the solution is within +.01 to −.02 of the expected reading, the Intoxilyzer is certified as accurate. Although the Intoxilyzer model used by OSP in these cases is capable of providing readings to three decimal places, OSP's practice is not to use the third decimal. In fact, the machines are set so that only two digits are printed.

■    Defendants argue that the manner in which OSP applies OAR 257-30-020 is inconsistent with the purpose of ORS 813.160, because it does not adequately assure the accuracy of Intoxilyzers. They contend that, because the machines are capable of measurement to three decimal places, OSP must take the third digit into account when testing and certifying them.

We conclude that OSP has acted within its authority in its application of OAR 257-30-035. ORS 813.160(1)(b)(C) requires that OSP test and certify the accuracy of breath-analyzing equipment and that the testing be done by trained technicians. The purpose of the testing and certifying procedures is to "ensure that a suspect's rights are not infringed though inadequate procedures." *State v. Dart*, 305 Or 508, 753 P2d 1373 (1988). ORS 813.160 does not provide the methods or standards that OSP must use and does not establish any standard of accuracy for the equipment. Rather, the legislature delegated the authority to OSP to establish appropriate methods and standards, which it has done. Even if the method advocated by defendants might provide a more effective determination of accuracy, we cannot say that the procedures followed by OSP are so inadequate as to infringe on defendants' rights.

■■    Defendants also argue that OSP's practice of using readings to only two decimal places is inconsistent with the procedures that it adopted in OAR 257-30-035 because, in order to ensure that an Intoxilyzer is accurate to the level required by that rule, the third digit must be used. However, again, the fact that use of the third digit provides a more precise measurement of the accuracy of an Intoxilyzer machine does not compel OSP to interpret its rule to require use of the third digit. As we held in *Bailey v. Board on Police Standards*, 100 Or App 739, 742, 788 P2d 1022 (1990):

"Although the meaning of the rule is a question of law for the court, [the Board's] interpretation is entitled to some

deference, especially in light of the fact that the legislature has given it a broad mandate to promulgate the rules necessary to carry out its duties and powers." (Citations omitted.)

That is particularly true when, as here, the subject of the rule is technical and has long been applied in a particular manner. *1000 Friends of Oregon v. LCDC (Lane Co.)*, 305 Or 384, 391, 752 P2d 271 (1988); *Butler v. State Ind. Acc. Com.*, 212 Or 330, 340, 318 P2d 303 (1958). The trial court erred in suppressing the results of defendants' Intoxilyzer tests.

Reversed and remanded.