Argued and submitted July 31, 1992; resubmitted In Banc May 5, affirmed June 23, reconsideration denied October 13, petition for review denied November 2, 1993
(318 Or 27)

# STATE OF OREGON,
*Respondent,*

*v.*

# DELCIE MARIE SCOTT,
*Appellant.*

## (CR1-0222-34; CA A71298)

854 P2d 991

James N. Varner, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

EDMONDS, J.

Deits, J., concurring.

## EDMONDS, J.

Defendant appeals her conviction for driving under the influence of intoxicants, ORS 813.010, arguing that the trial court erred in admitting evidence of a field sobriety test without a proper foundation. We affirm.

In March, 1991, Officer Beatty contacted defendant in a supermarket parking lot after receiving a report from a gas station attendant. The report indicated that when defendant stopped at the station, her speech was slurred and she was drinking beer. When Beatty approached defendant, he saw a number of beer cans on the floor of her car. Defendant's eyes were watery and bloodshot, and she smelled of alcohol. When asked if she had been drinking, she admitted to drinking one beer. Beatty asked defendant to perform some sobriety tests. She refused to do any of the tests requiring balance, explaining that she had previously broken her leg. She recited the alphabet up to the letter "T" and performed the "finger to nose" test by touching the bridge of her nose, rather than the tip of her nose as she was asked to do. Beatty also administered the "horizontal gaze nystagmus" (HGN) test and observed nystagmus[1] at a maximum deviation. Beatty arrested defendant and took her to the police station, where she refused to perform a breath test. At trial, Beatty testified as to defendant's performance of the various sobriety tests.

Defendant assigns error to the trial court's admission of Beatty's testimony regarding the HGN test. The court permitted Beatty to testify that he administered the HGN test to defendant as part of the field sobriety tests, that defendant exhibited nystagmus and that "with my experience and so forth, I believe from that[,] that her driving would have been impaired." The state concedes that it did not lay a foundation for the scientific reliability and acceptance of the HGN test. However, it argues that it was not necessary to lay a foundation for the test at trial, because there has been legislative and administrative approval of the test that mandates its admission if performed in accordance with OAR 257-25-020(1).[2]

---

[1] Nystagmus is defined as a "[r]hythmical oscillation of the eyeballs, either horizontal, rotary, or vertical." *Stedman's Medical Dictionary* 1104 (2d ed 1966).

[2] OAR 257-25-020(1) provides, in part:

In *State v. Reed*, 83 Or App 451, 732 P2d 66 (1987), we held that in the absence of an evidentiary foundation to qualify the arresting officer as an expert on the reliability of the relationship, if any, between alcohol consumption and nystagmus, it was error to admit similar testimony. 83 Or App at 456. The state relies on the language in ORS 813.135 and in ORS 801.272 in support of its proposition that the legislature, subsequent to our decision in *Reed*, has approved the admission of the HGN test into evidence at trial without an evidentiary foundation.

To construe ORS 813.135 and ORS 801.272:

"We start with the text of the statute, to ascertain 'what is * * * contained therein, not to insert what has been omitted, or to omit what has been inserted.' ORS 174.010; *Sanders v. Oregon Pacific States Ins. Co.*, 314 Or 521, 527, 840 P2d 87 (1992). When the words of the statute are not dispositive, we look to the statute's context. In considering its context, we may consider other provisions of the same statute and other statutes on the same subject. *Sanders v. Oregon Pacific States Ins. Co., supra*, 314 Or at 527; *see Comeaux v. Water Wonderland Improvement Dist.*, 315 Or 562, 569-70, 847 P2d 841 (1993) (interpreting provision of

---

"Field sobriety tests approved for the purpose of this rule and subject to the requirements and conditions of ORS 801.272, 813.135, and 813.136, shall be selected from the list below. Prior to the administration of the field sobriety test, the officer shall generally explain the field sobriety test to the person requested to take the test. The field sobriety test shall be administered substantially as described below. Each field sobriety test, as described below, is specifically found to meet the requirements of ORS 801.272:

"(a) Horizontal Gaze Nystagmus

"(A) The police officer must have received training in the administration of the Horizontal Gaze Nystagmus (HGN) test by the Oregon State Police, BPST or other governmental entity prior to its administration under this rule. The officer shall use a stimulus (such as a finger, pencil, or penlight) held vertically in front of the person's face about 15 inches away from the person's nose. The person tested must hold their [-sic-] head still. The officer, during the administration of the testing procedures, may conduct any or all of the following three procedures and observations in whatever order the officer deems appropriate:

"(a) The officer shall move the stimulus from the center of the nose to the side, checking for the lack of smooth pursuit of the eyes as they track the stimulus.

"(b) The officer shall check for distinct nystagmus at the maximum deviation of each eye.

"(c) The officer shall check for the onset of nystagmus at approximately 40 degrees in each eye."

the Oregon Constitution by looking at its text and context). If the text and context of the statute do not tell us what the legislature intended, we look to the legislative history. *Mattiza v. Foster*, [311 Or 1, 4, 803 P2d 723 (1990)]." *State v. Trenary*, 316 Or 172, 175, 850 P2d 356 (1993).

ORS 813.135 provides that a person who operates a vehicle on a highway of the state is deemed to have given consent to submit to "field sobriety tests" on the request of the police officer for the purpose of determining whether the person is under the influence of intoxicants. ORS 801.272 defines a "field sobriety test" as a physical or mental test approved by the Department of State Police by rule. It does not, as the concurrence suggests, provide for the admission of field sobriety tests into evidence in a trial in a court of law. OAR 257-25-020(1) embodies the state police adoption of the HGN test as a field sobriety test. It says that the HGN test has been approved for purposes of the rule and instructs the officer on how to administer the test.

Although the legislature has delegated the determination of what constitutes a "field sobriety test" to the Department of State Police, that is not tantamount to a delegation to the agency to decide what evidence is admissible in a criminal trial. The statutes say nothing about the reliability of an HGN test as an indicator of alcohol induced impairment. Their focus concerns the consequences of a refusal to take a field sobriety test. In *State v. Trenary, supra*, the court said:

> "The text of ORS 813.135 and 813.136 compels the conclusion that these statutes were enacted for two overriding reasons: First, to provide that operation of a vehicle was a consent to field sobriety tests (thus providing the foundation for admissibility of evidence of a refusal found lacking in *State v. Green*, 68 Or App 518, 684 P2d 575 (1984)); and, second, to compel drivers to take field sobriety tests. Evidence of field sobriety tests had long been held admissible in the absence of the statutory consent provisions." 316 Or at 177. (Footnote omitted.)

The text of ORS 813.136 provides that if a person refuses to submit to a field sobriety test, then evidence of the refusal is admissible in a proceeding arising out of allegations that the person was driving while under the influence of intoxicants. Here, the provisions of ORS 813.135 and ORS 813.136 are

not implicated, because defendant did not refuse to take the test. Even if we were to go beyond the language of the statutes themselves, the underlying legislative history confirms that the legislature did not have in mind the promulgation of statutes declaring that there is a relationship between alcohol consumption and nystagmus when it enacted them.

There is no statute that says that HGN test results are an indicator of an impairment to operate a motor vehicle. Because the scope of an agency's rule is circumscribed by the grant of legislative authority, the state's argument fails. Our holding in *State v. Reed, supra*, still controls. There must be scientific evidence in the record from which we can analyze the admissibility of the test under the factors set forth in *State v. Brown*, 297 Or 404, 687 P2d 751 (1984). Because there is no evidence in the record to show the scientific relationship between alcohol consumption and nystagmus, the trial court erred in admitting testimony about the HGN test.

■ The state argues that any error in admitting the evidence was harmless. An evidentiary error is not presumed to be prejudicial and will not require reversal if there is little likelihood that the error affected the verdict. *State v. Hansen*, 304 Or 169, 180, 743 P2d 157 (1987). There was testimony from the gas station employee who saw defendant shortly before her arrest that she was drinking beer in the car, that she appeared drunk, that her speech was slurred, and that she drove erratically from the station. He saw defendant miss the entry to the highway when she left the gas station and called 911 to report the incident because he "didn't think she should be driving." Officer Beatty testified that he saw beer cans in defendant's car, that he could smell alcohol as he approached the car, that defendant's eyes were watery and her pupils dilated, and that there was a strong odor of alcohol on her breath. Furthermore, the officer testified that she did not perform the other field sobriety tests that he gave her in a satisfactory manner. He testified that she touched the bridge of her nose rather than the tip when instructed to do the hand-to-nose test, that she swayed while standing with her feet apart, head back and eyes closed, and that she refused to count backwards. On this record, we agree that any error in admitting the evidence was harmless.

Affirmed.

**DEITS, J.,** concurring.

Although I agree with the majority that defendant's conviction should be affirmed, I disagree with its discussion of the issue of the admissibility of the HGN test evidence at trial. The majority holds that the state must first lay a scientific foundation to present evidence of the HGN test. *State v. Reed,* 83 Or App 451, 732 P2d 66 (1987). I believe that the enactment of ORS 813.135 and ORS 801.272 eliminates the need to lay such a foundation.

Enacted in 1989, ORS 813.135 is an implied consent statute, which provides:

"Any person who operates a vehicle upon premises open to the public or the highways of the state shall be deemed to have given *consent to submit to field sobriety tests upon the request of a police officer* for the purpose of determining if the person is under the influence of intoxicants if the police officer reasonably suspects the person has committed the offense of driving while under the influence of intoxicants in violation of ORS 813.010 or a municipal ordinance. Before the tests are administered, the person requested to take the tests shall be informed of the consequences of refusing to take or failing to submit to the tests under ORS 813.136." (Emphasis supplied.)

ORS 801.272, which was enacted at the same time, provides:

" 'Field sobriety test' means a physical or mental test, approved by the Department of State Police by rule after consultation with the Board on Public Safety Standards and Training, *that enables a police officer or trier of fact to screen for or detect probable impairment* from intoxicating liquor, a controlled substance or combination of intoxicating liquor and a controlled substance." (Emphasis supplied.)

Through the promulgation of OAR 257-25-020, the state police have adopted a number of field sobriety tests, among them the HGN test. OAR 257-25-020(1)(a).

In concluding that the above statutes have not eliminated the need to lay an independent scientific foundation as a prerequisite to the admission of HGN test evidence, the majority purports to rely on the plain language of the statutes. It asserts that "the statutes say nothing about the

reliability of an HGN test as an indicator of alcohol induced impairment. Their focus concerns the consequences of a refusal to take a field sobriety test." The majority further states that "there is no statute that says that HGN test results are an indicator of an impairment to operate a motor vehicle."

In reaching its conclusion, however, the majority ignores some critical language in the pertinent statutes. The statutes plainly delegate to the Department of State Police, in consultation with the Board on Public Safety Standards and Training, the authority to review and approve physical or mental tests "that enable a police officer or trier of fact to screen for or detect probable impairment" from intoxicating substances. Significantly, the statute provides that the test is to aid the trier of fact, as well as the state police, to detect probable impairment. If, as the majority asserts, the only purpose of the statutes is to allow the admission of a person's refusal to take one of the approved tests, the legislature would have had no reason to be concerned whether the test would aid a trier of fact in determining probable impairment.[1]

In my view, the legislature properly delegated authority to review and approve field sobriety tests to the agency with expertise in the area. *See State v. Acosta*, 112 Or App 191, 196, 827 P2d 1368 (1992). State police approval of the HGN test removes the necessity of having to lay a scientific foundation for the test as a prerequisite to the admission of evidence concerning its administration of the test. This is not to say that such evidence may not be subject to challenges going to the weight and reliability of the evidence. Challenges to the administration of the test in a particular case may always be made. Further, under the APA, review of the administrative rules approving the test and establishing procedures for the proper administration of the test is available. ORS 183.400.

In this case, the police officer testified that he administered the HGN test to defendant by the method specified in

___

[1] I note that evidence of field sobriety tests have "long been held admissible in the absence of the statutory consent provisions." *State v. Trenary*, 316 Or 172, 178, 850 P2d 356 (1993).

OAR 257-25-020(1). I would hold that that was a proper foundation for admission of the evidence.

Richardson, C. J., and Rossman and Leeson, JJ., join in this concurring opinion.