On appellant's petition for reconsideration filed October 21, 1992, reconsideration allowed; decision (115 Or App 102, 835 P2d 964 (1992)) vacated; reversed and remanded September 1, 1993, reconsideration denied February 9, petition for review pending 1994

# STATE OF OREGON,
*Appellant,*

*v.*

# ALBERT R. O'KEY,
*Respondent.*

## (TM90-5122; CA A70279)

858 P2d 904

Charles S. Crookham, Attorney General, Virginia L. Linder, Solicitor General, and Jonathan H. Fussner, Assistant Attorney General, Salem, for petition.

Before Warren, Presiding Judge, and Edmonds and De Muniz,* Judges.

EDMONDS, J.

Warren, P. J., dissenting.

---

* De Muniz, J., *vice* Joseph, C. J., retired.

## EDMONDS, J.

The state has petitioned for review of our decision that affirmed without opinion the trial court's order excluding from evidence the results of a Horizontal Gaze Nystagmus (HGN) test. *State v. O'Key*, 115 Or App 102, 835 P2d 964 (1992). We treat the petition as one for reconsideration, ORAP 9.15(1), and allow it.

Defendant was charged with driving under the influence of intoxicants. ORS 813.010. Before trial, he moved to exclude evidence of his performance of the HGN test. The state intended to offer the evidence at trial to prove that he was under the influence of intoxicants and/or that his blood alcohol level was greater than .08 percent. The trial court granted the motion, ruling that "the probative value of the evidence of the HGN test is outweighed by the danger of unfair prejudice because of the potential for error and subjectivity of [the test.]" The state appeals pursuant to ORS 138.060(3).

The state describes the HGN test as a procedure

"in which a police officer requests a Driving Under the Influence of Intoxicants suspect to follow a fixed point, such as the tip of a pen, with his eyes while keeping his head still. The officer moves the point slowly from a position in front of the subject to the side, looking for three things: Whether there is oscillation (nystagmus) of the eyeball at an angle of 40 degrees; whether the eye follows the motion smoothly or jerkily; and whether there is nystagmus at maximum deviation (when the eye is looking fully to the side). The test is repeated on the subject's other side, resulting in a six-part test. The presence of nystagmus or 'eyeball bounce' in four or more parts of the test indicates that the subject is impaired by alcohol."

■ The trial court evaluated extensive scientific testimony and evidence concerning the test, weighed the factors enunciated by the Supreme Court in *State v. Brown*, 297 Or 404, 687 P2d 751 (1984), and arrived at its conclusion under OEC 403.[1] Under *Brown*, expert testimony must be relevant

---

[1] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

under OEC 401[2] and provide assistance to the trier of fact under OEC 702.[3] If the requirements of OEC 401 and OEC 702 are met, then the testimony is subject to exclusion only if it falls within the provisions of OEC 403. Regarding the standard of review that is applicable, the court in *Brown* said:

> "Oregon Evidence Code Rule 403 codifies the common-law discretionary power of the trial judge in balancing probative value of evidence against its prejudicial effect. But, this so-called 'balancing' rule does not always call for the exercise of discretion by the trial court. Notwithstanding the usual deference to trial court discretion, we as an appellate court retain our role to determine the admissibility of scientific evidence under the Oregon Evidence Code." 297 Or at 442.

*See also* 297 Or at 417 n 4.

The state argues that the HGN test is based on scientifically valid principles and, when administered properly, accurately indicates whether a driver is impaired by alcohol. According to the state, the test is the most accurate of all of the approved standardized field sobriety tests that indicate alcohol impairment. It also contends that if the nystagmus is present at an angle of 40 degrees at maximum deviation in both eyes, then the test accurately shows that the blood alcohol concentration will be .10 percent or greater. It follows, according to the argument, that evidence of the HGN test results is admissible to establish that defendant's blood alcohol concentration was over the legal limit fixed by ORS 813.010(1)(a), as well as being probative of the standard prescribed by ORS 813.010(1)(b).[4]

---

issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

[2] OEC 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[3] OEC 702 provides:

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

[4] ORS 813.010(1) provides:

"A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

■     In *Brown*, the court said that the following factors are to be considered as guidelines for reaching a decision about the probative value of evidence under OEC 401 and OEC 702:

"(1)   The technique's general acceptance in the field;

"(2)   The expert's qualifications and stature;

"(3)   The use which has been made for the technique;

"(4)   The potential rate of error;

"(5)   The existence of specialized literature;

"(6)   The novelty of the invention; and

"(7)   The extent to which the technique relies on the subjective interpretation of the expert." 297 Or at 417.

Those factors are not exclusive, but an analysis of each factor is necessary.

Regarding the general acceptance of the HGN test as an indicator of whether a driver is impaired, the Department of State Police has determined that the HGN test qualifies as a "field sobriety test" within the meaning of ORS 801.272, in that it "enables a police officer or trier of fact to screen for or detect probable impairment from intoxicating liquor." *See* OAR 257-25-020(1); *State v. Scott*, 121 Or App 308, 854 P2d 991 (1993). Furthermore, defendant concedes that, "in combination with other officer observations, the test is a reliable, if an imprecise indicator of the probability of impairment." Also, defendant does not dispute the trial court's finding that all of the experts who testified about the reliability of the test as an indicator of alcohol consumption were qualified. However, defendant attacks the ability of arresting officers to determine whether or not the phenomena occurs. As part of the procedure, the officer establishes a mid-point directly from the person by using the individual's nose or eyeball as a fulcrum for moving the pen in an arc to each side. Officers are

---

"(a) Has .08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150;

"(b) Is under the influence of intoxicating liquor or a controlled substance; or

"(c) Is under the influence of intoxicating liquor and a controlled substance."

trained to move the pen slowly to avoid creating jerking motions of the eye. The officer brings the pen to a 40-degree point and notes whether nystagmus is present at that angle. In this case, the arresting officer had performed the test on approximately 300 drivers and had undergone a 16-hour training period in which he had to accurately identify subjects who had consumed alcoholic beverages.

Regarding the use that has been made of the technique, the state offered evidence that the HGN test is used primarily as a field sobriety test for alcohol impairment and is less commonly used to determine a specific blood alcohol level. It is used in combination with other field sobriety tests to make a probable cause determination as to whether the person is under the influence. As to the potential rate of error, testimony shows that, when used correctly by a qualified officer and when employed along with other field sobriety tests, a nystagmus that is present at 40 degrees indicates a blood alcohol level of over .10 percent, with an accuracy of 80 percent. However, defendant disputes the accuracy of the test results, because numerous other possible factors could cause nystagmus. Testimony shows that about three percent of the population suffers from non-alcohol caused nystagmus and that, within that group, there are 50 to 100 causes of the phenomenon. Non-alcohol induced nystagmus typically is asymmetrical and officers are trained to look for that aspect. The state also points out that persons suffering from known causes of non-alcohol induced nystagmus, such as people with brain tumors, multiple sclerosis, brain damage or stroke victims are less likely to be encountered driving a car. Part of the training that officers undergo requires them to ask before administering the test whether the person has a head injury, is ill or is taking medication.

Defendant concedes that there is substantial specialized literature about the HGN phenomenon, and that the testing for it and the use of the test in combination with other field sobriety tests is no longer "novel." Finally, the state argues that the presence or absence of nystagmus is no more subjective than the observation of other indicia of intoxication such as swaying, staggering, bloodshot eyes or slurred speech. The officer must make three observations: Do the eyes jerk or do they move smoothly from mid-point to

end-point; is there continuing jerking or bouncing when the eyes are held at the end-point; and do the eyes display jerking at a fixed angle of 40 degrees.

Defendant argues that, when the factors listed in *State v. Brown, supra,* are used to evaluate the HGN test results in this case, the results are not admissible. He points to the evidence that nystagmus varies depending on the individual, that in order to accurately measure the 40 percent angle, a protractor device necessarily is required to be used, and that if the officer moves the pen too rapidly or if it is slightly above the "smooth pursuit line," the results are inaccurate. He also relies on evidence that the results are inaccurate as to those who suffer from acute myopia and that the cumulative effect of alcohol, medication and fatigue can influence eye movement.

■ Whether evidence is relevant under OEC 401 or helpful under OEC 702 depends on the purpose for which it is being offered. Based on the foregoing, there is no question that evidence of the results of defendant's HGN test make the existence of the fact that he was under the influence of alcoholic beverages more likely and would assist the trier of fact in making that determination. Also, a nystagmus could corroborate a chemical analysis of the blood or breath and assist the trier of fact in the evaluation of the accuracy of an intoxilyzer or blood analysis result.[5]

The trial court concluded that the probative value of the evidence was outweighed by the danger of unfair prejudice, OEC 403, and gave as its reasons the potential for error and the subjectivity of the test. As we have noted, the HGN test result is relevant evidence under OEC 401 and helpful to the trier of fact under OEC 702. OEC 403 requires us to evaluate the degree to which the trier of fact may be overly impacted or prejudiced by a purported implication of reliability or validity of the evidence and whether admission of the test result will cause the trier of fact to abrogate its role to evaluate all of the facts. We do not think that HGN test results have that kind of impact. As with testimony about all

---

[5] Proof of nystagmus could corroborate a chemical analysis of defendant's breath or blood that shows that a defendant has .08 percent or more by weight of alcohol in his blood, just as other forms of physical impairment are corroborative, but is not *prima facie* evidence of alcohol content.

field sobriety tests, the evidence about how the test was performed and defendant's responses to it is subject to cross-examination.

■ The dissent's concern is that errors may occur because the test is administered in the field when there is no way to insure the accuracy of the angle used to measure the nystagmus. Other field sobriety tests require the officer to demonstrate physical movements or patterns of speech and require the driver to perform them under the officer's directions. Because the manner of administration is subject to cross- examination, those test results are not excluded. Any deficiencies go to the weight to be given to the evidence. A similar analysis applies here. The HGN test result is one of many field sobriety test results that may be admitted into evidence during a trial, and it is for the trier of fact to determine whether the officer used the proper angle. We conclude that the evidence is not so prejudicial that its probative value is outweighed. The trial court erred when it excluded from evidence the observations of the officer as to defendant's reactions to the HGN test and the officer's testimony about what the results meant to him.

Reconsideration allowed; decision vacated; reversed and remanded.

**WARREN, P. J.,** dissenting.

The only issue before us is the admissibility of the HGN test as evidence at trial. In his findings of facts and conclusions of law, the trial judge concluded that the probative value of the evidence is outweighed by the danger of unfair prejudice because of the potential for error and the subjectivity of the test. He opined that the test may be of substantial probative value and helpful to the trier of fact in determining whether a defendant was under the influence of intoxicants and whether the blood alcohol content (BAC) was at least .08 percent. He found a serious potential for error, however, when the test is administered in the field. I agree.

The state argues that the HGN test is reliable and accurate. Defendant argues that the test is not accurate enough to be used to prove a specific BAC, and that the probative value of the evidence is outweighed by the danger of unfair prejudice.

In *State v. Reed*, 83 Or App 451, 732 P2d 66 (1987), we held that the HGN test is scientific evidence based on a novel scientific principle and that, in order for the results of the HGN test to be admissible as a field sobriety test, the state must lay a foundation for the scientific reliability and acceptance of the test. In *State v. Scott*, 121 Or App 308, 854 P2d 991 (1993), we reaffirmed that holding, rejecting the state's argument that, under ORS 813.135 and ORS 801.272, the legislature approved admitting the results of the HGN test into evidence without an evidentiary foundation.

The Supreme Court articulated an analysis for admissibility of scientific evidence in *State v. Brown*, 297 Or 404, 687 P2d 751 (1984). Typically, scientific evidence is presented by an expert witness who can explain data or test results and, if necessary, the scientific principles that are said to give the evidence its reliability or accuracy. The Court elected to apply traditional standards to this expert testimony. 297 Or at 408.

Under the Oregon Evidence Code, expert testimony is admissible if it is relevant under OEC 401[1] and if it will help the trier of fact in deciding a disputed issue. OEC 702.[2] To identify and evaluate the probative value and the helpfulness of scientific evidence, the Court in *Brown* enumerated seven factors as guidelines:

"(1)  The technique's general acceptance in the field;

"(2)  The expert's qualifications and stature;

"(3)  The use which has been made of the technique;

"(4)  The potential rate of error;

"(5)  The existence of specialized literature;

"(6)  The novelty of the invention; and

---

[1] OEC 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[2] OEC 702 provides:

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

"(7)  The extent to which the technique relies on the subjective interpretation of the expert." 297 Or at 417.

The court referred to additional factors that may be considered. Of that list, I consider the following factor appropriate to the evaluation of the HGN test and incorporate it into my analysis: "The extent to which the basic data are verifiable by the court and jury[.]" 297 Or at 417 n 5.

Even if evidence has probative value and is helpful to the trier of fact, it may still be excluded if it is unduly prejudicial, repetitive, or falls under some other exclusionary provision as provided in OEC 403.[3] 297 Or at 438. Regardless of the normal discretionary power of the trial judge in balancing the probative value of evidence against its prejudicial effect, the appellate courts retain the power to determine the admissibility of scientific evidence under the OEC.

The court received evidence on the admissibility of the test at an omnibus hearing on January 24, 1991. The parties stipulated that the court could also consider the testimony of witnesses received at an earlier hearing before the same judge in a different case. At the January 24, hearing, Dr. Yolton, a professor of optometry, along with the arresting officer,[4] testified for the state, and Dr. Wolf, an ophthalmologist, testified for defendant. Testimony from an earlier hearing included that of Dr. Burns, a research psychologist, Dr. Brady, a consulting pathologist, Sergeant Studdard of the Los Angeles Police Department and Lieutenant Hayes of the Oregon State Police.

Yolton testified that nystagmus is a loss of steady fixation by the eyes on a target. In alcohol-induced nystagmus, also called jerk nystagmus, the eyes drift slowly in one direction and jerk back.

The rules for administering the HGN test are in OAR chapter 257. According to those rules, a trained officer is

---

[3] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

[4] The parties stipulated that only the arresting officer's January 24, 1991, testimony would be considered, not his testimony at an earlier hearing.

authorized to conduct the HGN test, in conjunction with certain other field tests, in order to determine if the driver is driving while under the influence of intoxicating liquor or with a blood alcohol content of greater than .08 percent, in violation of ORS 813.010. The officer holds a finger, pencil or penlight vertically in front of the person's face, about 15 inches from the nose, and conducts any of the following three procedures deemed appropriate: (1) moving the stimulus to the side, checking for smooth pursuit (as opposed to drifting and jerking back); (2) checking for nystagmus at the maximum deviation of each eye;[5] and (3) checking for the onset of nystagmus at approximately 40 degrees in each eye. OAR 257-25-020(1)(a).[6]

Reviewing the factors enumerated in *Brown*, I conclude that all of the experts are well-qualified and that Burns is nationally recognized for HGN testing research. The test is generally accepted by law enforcement authorities as a field sobriety test.[7] Studdard stated that the test is accepted by law enforcement agencies to determine whether the person is under the influence of intoxicants but not as a way to determine BAC. Brady agreed that he would use it with other field sobriety tests to determine whether a person was impaired by alcohol, but not to determine a specific BAC.

Jurisdictions differ on the use of the HGN test as evidence in a criminal trial. Some jurisdictions allow a trained officer to testify about HGN test results without establishing an evidentiary foundation for the accuracy and reliability of the scientific principles. *See, e.g., State v. Edman*, 452 NW2d 169 (Iowa 1990); *State v. Clark*, 234 Mont 222, 762 P2d 853 (1988); *State v. Nagel*, 30 Ohio App 3d 80, 506 NE2d 285 (1986). In Arizona, the test may be used to establish probable

---

[5] Yolton explained that this type of nystagmus is a significant exaggeration of nystagmus that occurs at the end of a person's focus as the target moves to the side. The eyes will drift back toward the center and then jerk back to the side. The phenomenon normally occurs for a few seconds, but in alcohol-induced nystagmus, the condition will continue over an extended period, and the movements will be larger and are easy to distinguish.

[6] The rule has since been amended to proivde that the officer shall check for the onsent of nystagmus "prior to 45 degrees in each eye."

[7] According to Burns, the National Highway Traffic Safety Association uses this test nationally, and about one-half of the states has adopted the field sobriety test battery that includes the HGN test.

cause for arrest and to corroborate or attack the accuracy of chemical tests, but not as independent evidence of blood alcohol content in the absence of a chemical analysis.[8] *State v. Superior Court*, 149 Ariz 269, 276, 279, 718 P2d 171 (1986); *see also State v. Garrett*, 119 Idaho 878, 811 P2d 488 (1991); *State v. Armstrong*, 561 So 2d 883 (La App) *writ den* 568 So2d 1077 (La 1990). In Arizona, an officer may also testify in a criminal trial that the HGN test shows that a driver is under neurological dysfunction, one cause of which could be alcohol impairment, as long as there is no discussion regarding the accuracy of predicting a specific BAC. *State ex rel Hamilton v. City Court of City of Mesa*, 165 Ariz 514, 799 P2d 855 (1990).

The HGN test is not new and there is extensive literature about it, including reports of field studies and laboratory investigations. Yolton testified that the studies show that the HGN test is at least 80 percent accurate in predicting a .10 percent BAC and is more accurate than the other field sobriety tests. Burns testified that the 80 percent accuracy included other causes of HGN that were connected to nerve and muscle disfunction. Yolton testified that most of the literature suggests that if the alcohol level is .10 percent or more, the onset of jerk nystagmus will occur at approximately a 40 degree deviation from the nose.

There are a number of potential causes for misdiagnosis. A number of experts testified that nonalcohol induced jerk nystagmus caused by disease or brain damage occurs in three to four percent of the population, although it is generally nonsymmetrical (one eye only), whereas alcohol-induced nystagmus is the same in both eyes. Yolton testified that other drugs, such as depressants and convulsants, can cause HGN, and sleep loss can change the angle of onset by about five degrees. He also testified that if the officer moves the stimulus too rapidly or moves the stimulus slightly above the smooth pursuit line, the results will be distorted. Yolton referred to one authority who was critical of the test, because the test did not distinguish between alcohol-induced

---

[8] The court found that, although the HGN test satisfied the evidentiary standard set forth in *Frye v. United States*, 293 F 1013 (DC Cir 1923), the test was fraught with due process problems, including a margin of error that would not satisfy proof of a crime beyond a reasonable doubt and the inability to duplicate the officer's "reading" of the test.

nystagmus and disease-caused nystagmus and because he did not believe that police officers would be properly trained in administering the test. Wolf testified that nystagmus can be produced by fatigue and anxiety and that, because there are so many possible causes of HGN, the test has very little value other than substantiating an impression that someone is under the influence of alcohol.

Brady testified that police car strobe lights would affect the test results. Wolf also testified that nystagmus can be caused in the field setting by strobe lights or lights from traffic on a busy highway.

Yolton testified that it is impractical to use a protractor in the field to measure 40 degrees but that, to obtain precise results, within plus or minus several degrees, it is probably necessary to use one. Wolf testified that, without using a protractor, the HGN test is not a scientific test. Hayes testified that an angle of onset of the nystagmus of 45 degrees correlates with a .05 percent BAC and that an angle of onset of 40 degrees suggests a BAC of .10 percent. Burns testified that, although the HGN test was demonstrably the most accurate and least subjective of all the field sobriety tests, the test is highly subjective, and she did not advocate using any one field sobriety test alone. In addition, the nature of the test administered in the field does not allow the judge or jury to verify the results. That issue was of major concern to the court in *State v. Superior Court, supra*, 149 Ariz at 279.

In summary, the use of the HGN test as a field sobriety test in conjunction with other field sobriety tests is well-documented and well established. The test is commonly used to establish probable cause to take a driver off the road. The evidence shows that it is relevant under OEC 401 and would be helpful to the trier of fact under OEC 702 to prove alcohol impairment. The issue is whether, under the balancing test of OEC 403, the test is accurate and reliable enough in predicting alcohol impairment that it is not outweighed by the danger of unfair prejudice or confusion of the issues when it is used to prove a violation of ORS 813.010.

I am concerned that there are causes for horizontal gaze nystagmus other than alcohol, including disease, fatigue and anxiety, that produce false positives. I am more troubled,

however, that use of the test without calibrated instruments to insure the accuracy of the angle measured creates a serious potential for error and subjectivity. A difference of only five degrees in angle, between 40 and 45 degrees, can create a major difference in the expected test result, .10 BAC versus .05 BAC. The result also can be distorted in the field by police car strobe lights and other traffic lights, movement on the highway or by moving the stimulus too quickly or not on the smooth pursuit line. In addition, there is no way to verify the test results.

Considering the potential for error and subjectivity in performing the test in the field, I conclude that as proof of a violation of ORS 813.010, the probative value and helpfulness of the HGN test is greatly outweighed by the danger of unfair prejudice and confusion and the potential of the jury's over-reliance on the scientific nature of the test.

Respectfully, I dissent.